## No. 11,385.

### JAMES McCONNELL, JR., VS. BENJAMIN ORY ET AL.

In the suit for slander of title if the defendant sets up title, he changes the character of the action. It becomes a suit to try titles in which the burden of proof to maintain title is on defendant as in the petitory action. 11 La. 187; 27 An. 613; 35 An. 355; 4 An. 90.

The party who promises to lend money required by the applicant for the loan to redeem his property from a tax sale will not be permitted, after that promise and the faith it inspires acted on by the applicant, to redeem from the tax sale and acquire that property for himself. Bigelow on Estoppel, Chap. 19..

APPEAL from the Civil District Court, Parish of Orleans. *King, J.*

*F. E. Rainold* and *Chas. F. Claiborne* Attorneys for Plaintiff and Appellant:

In an action for slander of title, defendant who answers, setting up title, assumes the position of plaintiff in a petitory action, and must recover on the strength of his own title.

The State, having acquired nothing from the sales absolutely null, could transfer no rights. Breaux vs. Negrotto, 43 An. 433.

The sales to the State were null—

(a) Because notice was not given the delinquent tax-payers. La. Const., Art. 210; Breaux vs. Negrotto, 43 An. 433.

(b) Because the assessment of the property was insufficient for identification. Agusti vs. Lawless, 45 An. 1370.

(c) Because no plan was referred to in the assessment. Bell vs. Taylor, 37 An. 57.

Where an agreement has been made to lend money on mortgage on a particular piece of property, for the express purpose of paying the taxes due upon the same, a relation of the trust is established between the parties, and the lender is estopped to set up against the borrower a tax title which he has acquired subsequent to the agreement.

---

*E. E. Moise* and *B. R. Forman* Attorneys for Defendants and Appellees:

The deeds are *prima facie* valid. Const., Art. 210; Act No. 42, 1871; Const. of 1868, Art. 118; 43 An. 730; Act No. 77 of 1880; Act No. 96 of 1882.

The plaintiff having two remedies, which are mutually inconsistent, adopting one repudiates the other.

An action for slander of title, damages and annulment of defendant's title is the action at bar.

This repudiates the action of the principal against the agent to disgorge, since it negatives the agent's acquisition.

The denial of the validity of the title repudiated the agency—a plaintiff can not have one action in his pleadings and another in his brief.

The action is possessory and petitory.

It shall be presumed the possessory has been relinquished to resort to the petitory. C. P. 150.

Possession is not and never was in plaintiff.

Tradition or delivery of immovables accompanies the public act.   R. C. C. 2479.

An authentic act is not an authenticated signature to a private act. R. C. C. *(passim)* 2253.

The State acquired.   Defendant can not impeach what the State does with its own.   26 An. 701; 27 An. 238; 43 An. 873.

The description is better than the one held good in Smith vs. City, 43 An. 734, 726.

Informalities.   45 An. 485.

The opinion of the court was delivered by

MILLER, J.   In this suit plaintiff sues for slander of title, and to annul a tax title to the property involved in the controversy, asserted by one of the defendants.   The plaintiff derives title by purchase in 1894 from Julia C. Roe, widow of John Green, and she acquired it in 1871;   the property being described as a portion of ground consisting of five lots, numbered from fifty-six to sixty, on upper side of State street in Bloomingdale;   the numbers and measurements of the lots according to the plan of Bloomingdale.   Besides this title, the plaintiff alleges, as a ground of recovery, that defendants are estopped from disputing his ownership.

The defendant Ory answered, alleging that he had purchased from the State, for account of his co-defendant, the property in controversy, the property having been, the answer alleges, forfeited both for State and city taxes, and sold to the city as well as the State for unpaid taxes.   The sale from the State relied on by defendants in their answers are by deed dated 16th of May, 1892, from the State Auditor for the unpaid taxes of 1881, 1882 and 1883.   The other defendant, Dowers, answered, averring the purchase for his account by the auditor's deed, and asserting in his defence the ownership of the property under that deed.   In both answers the estoppel pleaded by plaintiff was denied.   After these answers the defendant excepted on the ground of misjoinder of the demands made in plaintiff's petition, and required plaintiff to elect the cause of action on which he stood.   The exception was overruled.   Thereafter the defendants pleaded prescription in aid of the tax title asserted by them, and the forfeitures of the property prior to plaintiff's purchase, for non-payment of the taxes, city and State, assessed against Widow

McConnell vs. Ory et al.

Green, the author of plaintiff's title. The answer of each defendant claimed damages of plaintiff for the matter alleged in the petition as constituting the estoppel urged against defendant.

The judgment of the lower court was against the plaintiff, and against defendants on their demands for damages. The case is here only on plaintiff's appeal.

It was unnecessary for plaintiff asserting title from Widow Green to demand the annulling of the tax deed to one of defendants. If plaintiff's title was sustained, the tax title of course failed. The petition substantially presented the issue of plaintiff's ownership, involving the considerations of the tax title. In this view defendant's exception of misjoinder, even if in time, was properly overruled, and we do not appreciate that any importance is attached to it in this court by the defendants.

The action of jactitation does not ordinarily try titles to property. Its object is to quiet possession. It demands of defendant a disclaimer or an avowal of the slander. If disclaimed, the purpose of the law is attained and the suit ends. If the slander is admitted, then the defendant is ordered to bring suit to maintain his asserted title, and with that decree the jactitation suit terminates. If, however, the defendant sets up a better title in himself, that issue changes the character of the action. The whole object of the suit being to compel a disclaimer, or that defendant shall sue to establish the ownership he asserts, if defendant in his defence avers title, the court proceeds to determine that issue. It would be idle to order the defendant to institute another suit to establish title, when by his answer he tenders that issue. Nor does it make any difference that the defendant does not pray for judgment recognizing his ownership. It is enough that in the jactitation suit his defence is title. There can then, be no question that this suit for slander of title has become, by defendant's pleading, a suit to try titles; and, although in our view not at all important in this controversy, it is equally plain that in the changed character of the action the defendant assumes the burden in respect to proof, of the plaintiff in the petitory action. Proctor vs. Richardson, 11 La., p. 187; Bidwell vs. Cavaroc, 27 An. 307; Dalton vs. Wickliffe, 35 An. 355; Packwood vs. Dorsey, 4 An. 90.

The plaintiff's title is, as stated, derived from Widow Green. The asserted title of defendant Dowers is based on the tax assessment

against her.  Plaintiff and defendant thus claim under a common author.  In our view it is unnecessary to consider the questions discussed at the bar in reference to defendant's tax title, as to the sufficiency of the assessment in respect to the description of the property, nor whether notice of the tax sale was given.

The decision of this controversy is in our opinion controlled by the estoppel pleaded by plaintiff.  The plaintiff's purchase of the five lots in controversy was on the 13th April, 1892; the price paid was four hundred dollars, and besides plaintiff assumed all the unpaid taxes.  For some of these taxes there had been forfeitures and a tax sale to the City, and a tax sale to the State for the taxes for 1881, 1882 and 1883.  Of course, without payment of these taxes and a relinquishment of the tax adjudications to the State and city, the plaintiff's purchase was ineffective.  The plaintiff testifies that in this condition, within a day or two after his purchase, he applied to the defendant Ory, a part of whose business it is to lend money, for a loan of five hundred dollars to pay these taxes.

The plaintiff stated to Ory substantially, that the money was required to pay the taxes on five lots on State street, adjoining Mr. Ricker's house, on the woods side, purchased from Mrs. Green, and the plaintiff adds in testifying, that he remembers with distinctness the situation of the property was communicated.  Ory answered he would lend the money if the title was good.  The plaintiff further testifies, he allowed some days to elapse without completing the loan promised, and of course without paying the taxes.  But while the plaintiff was thus waiting on the reliance that the loan would be forthcoming when he called for it, Ory effected the purchase of the lots from the State for his own account, or rather for his clerk, Dowers, in whose name the auditor's deed was made of date 16th of May, 1892.  We have given careful attention to the issue of fact, whether as testified by plaintiff the communication stated by him was made to Ory, and that he promised the loan.  If this proposition of fact is maintained, we think the legal principle clear that determines the controversy.

The plaintiff's testimony is clear and positive.  With his mind intent on securing the loan to pay the taxes on which his title depended, it is natural that the communication and Ory's promise should have been impressed on plaintiff's memory.  Was there any room for mistake as to the property on which the loan was desired?

Mr. Ory testifies, he thought the property intended was a part of the ten lots on State street, known as the Bundy lots, claimed by plaintiff under a tax title, and besides involved in litigation. Ory knew all about the Bundy lots, the tax title and the litigation. He states he supposed plaintiff might have acquired another besides his tax title. But if he had supposed the loan was desired on these Bundy lots, it seems natural he would at once have declined the loan, for he testifies, he does not lend on tax titles; or if he had thought plaintiff had acquired another title it seems singular that believing, as he testifies, the loan was sought on the Bundy lots, he should not have asked some questions as to the title. Again, he testifies, after the application for the loan on five lots on State street, he asked as to their location. Why the question if he supposed the five were part of the Bundy lots, with the location of which he was acquainted? There would seem to be nothing in plaintiff's application to borrow on five lots bought on State street, adjoining or near Ricker's, that would suggest they were part of these Bundy lots, on which, in the then condition known to Ory, no one could expect to borrow, still less anybody who would lend. That Ory could have derived the impression the Bundy lots were to be subject of the loan is utterly unaccountable, too, if, as the plaintiff testifies, he stated the loan was desired on five lots he had "purchased a day or two since from Mrs. Green." The examination of Ory's testimony, in its entirety, conveys the 'impression his memory of facts and impressions is not accurate. Indeed, at the outset he states he is a busy man and can not remember small details. Again, he testifies the only thing of which he is absolutely conscious, is that plaintiff did not deliver his title or state the lots he owned, and never mentioned the numbers fifty-six to sixty. He does testify emphatically, he had no suspicion that lots fifty-six to sixty had been bought, and if he had had that suspicion he would have stopped all researches that ultimately led him to make the purchase. But he does not controvert in his testimony the plaintiff's statement that the loan was asked on five lots on State street, or that it was communicated that the lots were near or adjoining Ricker's, nor that the loan was promised. To our minds the variance, if variance it can be termed, in the testimony of Ory and that of plaintiff is unimportant. The plaintiff adds the circumstance, not stated by Ory that the name of the author of plaintiff's title, Mrs. Green, was also communicated. On the

question of details it is human experience and the rule of law is that testimony affirmative in its character prevails over negative testimony. Philips on Evidence; 2 An. 1006.

In this view we deem the testimony of plaintiff more reliable. Dowers testifies, he does not profess to have heard all that passed, and his testimony does not materially affect the issue. It is our conclusion the communications as detailed by plaintiff were made, and if not to the full extent he testifies, enough was certainly conveyed to Mr. Ory to afford him reasonable cause to know when he paid the taxes and bought, in the name of his clerk, five lots on the upper side of State street, near Ricker's, and assessed in the name of Mrs. Green, that he was undertaking to acquire the same property on which he had agreed to loan the plaintiff. Allowance is to be made for Ory's testimony that he had not the least suspicion of the identity of the property. One part of his testimony seems to concede, if he had had the knowledge he disclaims, he could not have made the purchase. He surely knew enough, as we think, to make him pause. If he had paused all doubt on the point of identity would have been resolved. It often happens that what is said of importance to appreciate and remember, leaves no fixed impression. According to his testimony that was the case with Ory. All that we decide is, that plaintiff's communications were of a nature and in substance and detail sufficient, to convey to Mr. Ory that impression he states he did not derive as to the identity of plaintiff's lots with those Ory bought from the auditor, or at least were enough to suggest the strong probability that when he bought five State street lots near Rickers, for taxes assessed equal to Mrs. Green's, he was buying the same lots on which he agreed to lend the plaintiff. On any question arising on the acts or conduct of a party affecting another's interest, that which the party has reason to know or suspect is equivalent to actual knowledge.

On the faith of the promise of Ory to lend on the five lots plaintiff acted and had a right to rely. If Ory's purchase is maintained, then by reason of that reliance plaintiff loses the property, and the money he paid for it. Ory would be the gainer. Instead of being the lender of the money promised on the mortgage of plaintiff's property, Ory would own that property for the taxes plaintiff had expected to pay with the money Ory had promised. The result, so disastrous to plaintiff and advantageous to Ory, would be due entirely to the

confidence, utterly disappointed, which plaintiff reposed in Ory's promise. The legal principle readily suggests itself that precludes such a result. It is urged on us that Ory ɩ t the time of plaintiff's application for the loan was investigating tax sales of property on State street with a view to purchases, and plaintiff's application should not, it is suggested, have the effect of disabling Ory from making these purchases. If he had desired freedom of action in this matter, he should have declined the application. Plaintiff would then have sought the money elsewhere. But surely, Ory could not promise the money plaintiff needed to secure his title and then take steps for his own benefit, which, if successful, utterly defeated plaintiff's title. The argument for the defence, also lays stress on the delay of plaintiff in calling for the promised loan. Plaintiff was not as prompt as he might have been. But he evidently, acting on his reliance that the loan would be forthcoming when called for, did not appreciate the necessity of immediate action. He must have been very prompt to have protected himself, for within a month and a day or two after the promise of Ory he had taken all necessary steps and secured the tax deed for himself, We do not think Ory's obligation arising from his promise is subject to the measure of time suggested to us in this connection.

The estoppel arises against the party on whose acts or conduct another has acted or relied in a matter affecting his interest, and he against whom the estoppel is asserted, will not be permitted to set up any right or title inconsistent with his acts or conduct, and prejudicial to him who has acted on the faith created by such acts or conduct. All the elements of the estoppel, we think, are present in this case, forbid the defence of title asserted by defendants and uphold that of plaintiff. Bigelow on Estoppel, 19th chapter.

We think the justice of the case requires plaintiff should be decreed to be the owner of the property on reimbursing the taxes paid by Ory.

It is therefore ordered, adjudged and decreed that the judgment of the lower court, in so far as it dismisses the plaintiff's suit, be avoided and reversed; the plaintiff is hereby recognized and decreed to be the owner of the five lots of ground on upper side of State street, numbered 56 to 60, according to the original plan of Bloomingdale, and acquired by him from Widow Green by act of date the 13th of April, 1892; it is further decreed that defendant

Dowers relinquish in favor of plaintiff, by authentic act, within ten days from the filing of the mandate in the lower court, the tax title asserted by him to the property under the auditor's deed, of date 16th of May, 1892; but this decree is not to be operative unless plaintiff, on the execution and filing in court of the copy of such act of relinquishment, pay to defendant, or deposit in court for him, the amount of all the taxes, city and State, on said property, and the attendant charges of redeeming said property paid by defendant, with legal interest on the amount so paid by defendant from the dates of said payments; the amount of this reimbursement to defendants to be ascertained, if necessary, by proper proceedings in the lower court; and it is further adjudged that defendants pay costs in both courts.

Rehearing refused.