## No. 11,705.

CYRUS H. JONES VS. THE TEXAS & PACIFIC RAILWAY COMPANY.

The affirmative testimony of two witnesses outweighs the negative testimony by which it is sought to contradict them. Hepburn vs. Bank, 2 An. 1007.

In a suit for damages for injuries to his wife the husband is a competent witness. C. C., Art. 2281; Act 1888, No. 59.

Railroad trains should be stopped to afford passengers necessary time to get off at their destinations; and if the passenger is injured in attempting, under the directions of the conductor, to alight at his station, from the moving train, the railroad company will be responsible for the injuries. 2 Harris, Damages by Corporations, Sec. 596; Lehman vs. Railroad, 37 An. 705; Odom vs. Railroad Company, 45 An. 1204.

APPEAL from the Tenth Judicial District Court, Parish of Rapides. *Andrews, J.*

---

*John C. Ryan* for Plaintiff, Appellee.

---

*M. C. Moseley* and *Howe, Spencer & Cocke* for Defendants, Appellants.

The opinion of the court was delivered by

MILLER, J. The plaintiff, with his family, a passenger on one of defendant's trains, sues for damages for injuries to his wife caused by a fall, due, it is alleged, by being compelled to leave the train before it stopped. The jury gave twenty-five hundred dollars damages and defendant appeals.

The testimony of the plaintiff is to the effect that the train checked up when it reached the station; that he got off with his two children, and just at the time the conductor took the plaintiff's wife by the arm to assist her from the platform of the coach, the train moved forward, resulting in her fall, producing the injuries for which this suit seeks compensation. If this testimony is accepted, it puts the responsibility on the company. The plaintiff's daughter, sixteen years of age, confirms her father's testimony to this extent, that under the conductor's direction the mother was compelled to leave the train while yet in motion, and against her remonstrance that she could not get off when the conductor told her to do so. As her daughter implies, the mother was "pulled off." If the young lady speaks the truth, it shows that no time was allowed to enable the passenger, an elderly lady, to leave the train at her destination, and that the conductor insisted she should leave, or at least assisted her in the attempt, while the train was in motion. The fall, according to the testimony, was with violence, producing injuries to which both witnesses testify. On the following morning the plaintiff's station having been reached before daylight, it is in evidence, the plaintiff complained of rough handling by the train people. When plaintiff's home was reached, some hours' travel from the station, his testimony is she was so crippled as not to be able to put her foot to the ground. The physician then called, with no personal knowledge of the accident, testifies to the injuries she exhibited, a sore arm and leg, a bruised side and traces of concussion, apt, in his opinion, to cause impaired vision, or loss of sight. The husband's testimony is she fell on a cinder surface at the station, and the cinders, as he expressed it, were "indented" in her face and hand. The physician testifies he picked the cinders from her face. The daughter does not speak as to the fall, because the train going forward, and she still on the coach front, was interposed between herself and her mother. According to the testimony of the daughter, the train checked up to let her off, fifty feet from where her mother alighted.

The testimony for defendant is simply a negation of every state-ment of the plaintiff and his daughter as witnesses. ·There was no hurrying the old lady to get off the moving train; there was no fall, and her injuries were fabrications, is the case the defendant claims is establlshed. It rests mainly on the testimony of the conductor to be accepted, it is contended, because wholly disinterested, and as com-pletely discrediting that of the plaintiff and his daughter. Yet if the fall of the aged woman did occur, the conductor testified with the natural motive of exculpation. We can not accept the conclusion that his negative testimony is to displace and stamp with falsehood the clear and positive affirmative testimony of two witnesses. Nor can we appreciate that because the conductor is shown to have had hold of the left arm of the lady, it was physically impossible for her to fall on her right side. It is urged on us, too, the daughter did not see the fall. That she does not testify to it impresses us with her truthfulness. According to her testimony, unable to get off the train because of the failure to stop, the moving train shut out the view of her mother after she alighted from the train. The daughter does testify to the method, if not compulsion, her mother, under the con-ductor's direction, left the train, and the circumstances impress us as the natural prelude to the subsequent fall of which the plaintiff was the witness. The porter, brakeman and fireman were also pro-duced as witnesses. The porter in the baggage car putting off the trunks, the fireman and brakeman at their posts of duty, were not competent to speak of the circumstances under which the plaintiff's wife left the front of the passenger coach. One of these witnesses, thirty-five feet away, undertakes to swear that in the darkness, at 3 o'clock of a March morning, he saw the daughter standing with her parents when they alighted from the train. This was to contradict her statement that instead of leaving the train with them she was carried fifty feet beyond, when the train stopped to enable her to get off. But the witness who groups her with her parents at the moment they left the train is brought on cross-examination to state the darkness, the distance he stood and finally that his testi-mony was a guess. The three train officials swear there was but one stop at the plaintiff's station, and hence the conclusion is pressed on us that father, mother and daughter got off at one time. This again is to negative the daughter's testimony on that point. If the train was moving when her mother alighted, the

25*

checking or brief stop, if any before, might well be deemed no stop. The affirmative testimony of the daughter, distinct and positive as it is, that she did not get off with her parents is commended to our acceptance as outweighing that of the train officials; there was but one stop, when all the family left the train. The defendant impugns the veracity of the physician called to attend the plaintiff's wife. It is suggested he fomented the suit, and is interested in the result. We fail to perceive the basis for the attack on him. His interest seems to be an expectation to be paid his fee, if the plaintiff, a poor man, recovers in this suit. We are to assume the defendant's case exacts that he swears falsely; that the sore limbs, bruised side and cinders picked by him from the face of plaintiff's wife were pure inventions of an ally in the conspiracy of plaintiff, his wife and daughter, to defraud the defendant. The two little sons of the plaintiff were also on the train. Comment is made they were not produced as witnesses. The circumstance, in our view, does not detract from the testimony in the record. We have given careful attention to all the testimony. It produces on our minds the conclusion that prompted the verdict of the jury entitled to weight on an issue of fact.

This suit for damages is to recover a community asset. There is no force in the bill of exceptions to the testimony of the plaintiff. C. C., Art. 228; Act No. 59 of 1888.

The damages awarded, we think, excessive. There is in our minds no doubt the plaintiff was injured, and that the services of a physician were requisite. The possible impairment of vision, not verified, as we appreciate the testimony, when the case was tried, is conjectural and not the basis for any judgment. We will reduce the verdict.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and reversed, and it is now adjudged and decreed that the plaintiff do have and recover five hundred dollars, with interest from judicial demand, and costs of lower court, those of the appeal to be paid by plaintiff.