BACHE v. STOLTZ

---

(April 13, 1931.  Opinion and Decree.)
(May 11, 1931.  Rehearing Refused.)

---

George Piazza, of New Orleans, attorney for plaintiff, appellant.

Jules A. Grasser, of New Orleans, attorney for defendant, appellee.

HIGGINS, J.  This is a suit for damages said to have been caused by an alleged slander and trespass.  The petition alleges that on Sunday morning, July 27, 1924, petitioner heard a noise in the alley of her home, and, upon investigation, found that the defendant had cut some branches from a peach tree, growing in her yard; that she inquired what he meant by doing so, whereupon defendant replied, "Because they were in my way and I will do as I G—— d—— please"; that he then said, in the presence and hearing of others, "get inside you crooked thing, you are no good; I am watching you; wait—watch out and see what I am going to do with you"; that in the meantime the defendant's wife, in his presence and without remonstrance or rebuke on his part, said to plaintiff, "you are no good, you dirty crooked b——; you have autos parked in front of your house all night long; men going and coming in and out at all hours and you are at your 'phone all day long ringing up men to meet you and to make money"; that, upon petitioner calling defendant's attention to what his wife had said, he rejoined, "My wife is right; both you and your mother are no good; you are both crooked; get in there and shut up."  The petition prays for damages of $1,000, the sum of $500 for the trespass, and a like amount for slander.

The defendant answered, denying both the trespass and slander, and averring "that the tree in question is on the boundary line of the lot of your defendant's property; that the limbs extend over on the property of your defendant, as a result the shed of your defendant rotted, and fur-

ther the leaves fall into the water pipes on defendant's house and obstructs the drainage"; and, further, "defendant denies that he abused the plaintiff; that on the day in question the plaintiff did curse and abuse your defendant and defendant's wife, plaintiff using language which your defendant does not care to write in this answer, but will make proof thereof on the trial of this cause; that any disturbance or dispute that may have occurred was brought on by the plaintiff, and any damage suffered as a result of the conduct of the plaintiff was a damage to your defendant; that the trouble was provoked by the plaintiff."

Before the trial of the case on the merits plaintiff abandoned her claim for trespass. There was judgment in favor of the defendant dismissing the suit, and plaintiff has appealed.

The record shows that plaintiff, a young unmarried woman, lives with her mother, who is almost blind; that she supported her, and that they had lived in the neighborhood since 1911; that the peach tree in question was located on plaintiff's property, but branches of it extended over into the defendant's yard and on his shed; that previously defendant had cut the branches of the tree, and on the morning in question was again cutting and removing them, when the plaintiff questioned his right to do so, with the result that an argument between them ensued.

The plaintiff, her mother, and Mrs. Melancon, a friend who lived with them, all testified as to the alleged slanderous statements. Mr. Spence, another witness for the plaintiff, testified that there was an argument between plaintiff and the defendant about the tree, but that he did not hear what defendant and his wife had said.

Defendant and his wife testified that he cut the branches of the tree and was removing them, when plaintiff remonstrated with him about it. They both deny the use of any slanderous language; the wife testifying:

"Q. Mrs. Stoltz, on the morning of July 27, 1924, was there any discussion or argument between your husband or yourself and Miss Bache?
"A. Yes, a little argument between her and I about the tree. My husband said nothing."

Defendant also testified that, when the plaintiff questioned him about cutting the tree, he simply informed her that the branches were hanging over his property and destroying the roof of his shed, that he thought he had a right to cut the limbs, and that he said that in a very ordinary tone of voice.

The other eyewitness for defendant, H. W. Raecker, his son-in-law, testified that, while having breakfast on the morning in question, he heard defendant talking to plaintiff about "some weeds that were hanging on his property, and Miss Bache came out and asked him what he was doing and he said 'cutting these weeds to protect my shed' and she said she would enter suit against him and he said to go ahead and bring suit." This witness denied hearing any slanderous remarks.

Defendant also produced a neighbor who lived in half the house with him, who testified that on the morning in question he did not hear any argument between plaintiff and defendant, but that his ability to hear would depend on where he was in his house at the time.

In addition to the others, defendant offered two character witnesses, who testified as to his reputation for being peaceful and quiet.

The testimony of the plaintiff and her witnesses is clear and consistent. On the other hand, the defendant's testimony is inconsistent with his sworn answer, which he personally signed. In his answer defendant accused the plaintiff of having provoked the argument and having called him such names that he did not think it proper to place them in his pleadings, yet in his testimony he stated that there was neither any loud talking nor any argument, and in no respect did he testify as to the use by plaintiff of any improper language, which his answer alleges she employed. Again, his wife testified there was a little argument, whereas the sworn allegations of the defendant's answer would indicate that a very violent disturbance and dispute took place. The testimony of defendant's son-in-law is discredited by his statement that the argument took place over the removal of certain weeds, when, as a matter of fact, as all of the other witnesses agree, it was about a peach tree. Defendant's other two witnesses testified that they did not hear anything. This evidence, being negative, cannot be accepted as prevailing over positive evidence. Von Eye v. Byrnes, 124 La. 769, 50 So. 708; McConnell v. Ory, 46 La. Ann. 564, 15 So. 424; Jones v. Texas & Pac. Ry. Co., 47 La. Ann. 383, 16 So. 937; Story v. Hope Ins. Co., 37 La. Ann. 254; Brigham v. Bussey, 26 La. Ann. 676, 678; Auld v. Walton, 12 La. Ann. 129; Hepburn v. Citizens Bank of La., 2 La. Ann. 1007, 46 Am. Dec. 564. We believe that the defendant and his eyewitnesses are discredited because their testimony is inconsistent with the sworn allegations of his answer.

We are of the opinion that the plaintiff has proved her case by a preponderance of evidence and is entitled to recover. Smith v. Lyons, 142 La. 975, 77 So. 896, L. R. A. 1918E, 1; Tuyes v. Chambers, 144 La. 723, 81 So. 265; Vicknair v. Daily States Publishing Co., 153 La. 677, 96 So. 529.

As to the quantum, it appears that the plaintiff is a young unmarried woman of good reputation, employed in a clerical capacity and supporting her mother, who was almost blind. The slanderous language involved her chastity and morals, and was spoken in the presence of her mother and others.

In the case of Fatjo v. Seidel, 109 La. 699, 33 So. 737, 738, the Supreme Court said:

"The judge a quo allowed $50 damages. If he believed the plaintiff, her son, and sister, this was not enough; if he did not believe them, it was too much. The fact that the slander was spoken in the presence of plaintiff's family, and not of strangers, seems to have been looked upon by the learned judge a quo in the light of a mitigation. In our opinion, it was the reverse; it was an aggravation. To charge a mother, in the presence of her 16 year old son with being a thief, has about it something shocking and revolting that does not accompany the same act in the presence of mere strangers. * * *

"The judgment of the lower court is amended so as to increase the amount allowed to $500, and, as thus increased, is affirmed."

We believe that the sum of $500 should be awarded as damages for the slander. Jackson v. Briede, 156 La. 573, 100 So. 722; McClure v. McMartin, 104 La. 496, 29 So. 227.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of plaintiff, Miss Lottie Bache, and against the defendant, George Stoltz, in the full sum of $500, with legal interest from judicial demand, until paid, defendant to pay all costs of courts.