CULPEPPER, Judge.
In this tort action plaintiff seeks damages sustained as a result of the cutting of its submarine cable installed in the bed of the intra-coastal canal. The cable was cut by defendant while conducting maintenance dredging operations in said canal under a contract with the United States Corps of Engineers. Plaintiff alleges the cable was cut as a result of defendant’s negligence in dredging and cutting below the depth of IS feet, mean low gulf, authorized in said contract. Defendant denies any negligence on its part and alleges that the cutting of the cable was due to the negligence of plaintiff in failing to install and maintain its cable at the depth of at least 18 feet below mean low gulf required under plaintiff’s permit for said submarine cable.
After trial on the merits the lower court found that plaintiff had failed to prove by a preponderance of the evidence any negligence by defendant causing the severance of the cable. From a judgment dismissing plaintiff’s suit, it now prosecutes this appeal.
Undisputed is the fact that defendant’s contract for maintenance dredging of the canal required dredging to a depth of IS feet mean low gulf; that the technical phrase “mean low gulf” is a consistent standard of elevation established by the Corps of Engineers and used along the coastal area involved; that defendant’s dredging contract actually indicated plaintiff’s submarine cable at a depth of 20 feet below mean low gulf; that defendant had the legal right to dredge the canal to the depth of 15 feet mean low gulf specified in its contract and plaintiff had the legal right to install and maintain its submarine *328 cable across the canal at a depth of at least 18 feet mean low gulf in accordance with its permit. The sole issue presented by this appeal is whether the cable was cut •due to negligence on the part of the defendant in dredging below the depth of IS feet mean low gulf.
Plaintiff’s first argument before this court is that the trial judge erred in giving more weight to the negative testimony of defendant’s witnesses, that the cutter head, used in the dredging operation, never went below 15 feet, than it did to the positive testimony by plaintiff’s witness, H. A. Elliot, a commercial diver, that he installed the cable in 1956 at a depth below 18 feet mean low gulf, that he checked the cable after its original installation and before its severance on October 2, 1959, and that after the cable was cut by defendant, Mr. Elliot again checked the depth of the cable and found it to be in accordance with plaintiff’s permit. Plaintiff argues that the testimony of Mr. Elliot shows positively that the cable was buried to a depth of at least 18 feet below mean low gulf and that therefore necessarily the cutter head of the dredge went to that depth or below in order to sever the cable.
Although the courts of this state have long recognized the general rule of evidence, urged by plaintiff, that all things being equal, positive evidence is stronger than negative evidence (see Tolle v. Higgins Industries, Inc., 212 La. 173, 31 So.2d 730; Bache v. Stoltz, 16 La.App. 524, 134 So. 112 and the cases cited therein; 20 Am.Jur. 1037-1041), it is our opinion that this rule of evidence has no application in the instant case. This is not a case of positive versus negative testimony. Plaintiff’s witness, Mr. Elliot, testified positively (although, as will be pointed out hereinafter, his testimony was actually not very positive, certain or consistent) that the cable was installed, and was found after the cutting, at a depth of at least 18 feet mean low gulf. Defendant’s witnesses, on the other hand, testified positively that the cutter head of the dredge did not go below 15 feet mean low gulf. Mr. W. J. Davis, who was the leverman in charge of the dredge and cutting operations when the cable was severed, testified that the depth of cutting was set by a gauge, which controlled the dredging, to a depth of only minus 15 feet mean low gulf and that the gauge never went below this depth. Mr. Velton Reid, an inspector from the Corps of Engineers, who was present at the time of the cutting for the specific purpose of checking to see that the dredging did not go deep enough to sever the cable, testified that he was in a skiff “right even with the cutter head”, taking soundings and that these soundings indicated the cutter head did not go below a depth of 15 feet mean low gulf. Mr. George C. Wilson, representative of the Corps of Engineers in charge of this particular contract for maintenance dredging, testified that on October 6, 1959, which was four days after the cable was cut, he personally took soundings from one side of the canal to the other at 10 foot intervals and at a distance of about 8 feet from the actual location of the cable and he found that the deepest point in the canal was actually 15.3 feet below mean low gulf. The testimony of these witnesses for defendant is positive as to things which they actually saw and did rather than negative as to things which they did not hear, see or do. It is therefore our conclusion that the rule of evidence requiring more weight be given to positive than to negative testimony has no application here.
In our view, the trial judge was correct in finding that plaintiff had failed to prove by a preponderance of the evidence that the cutter head of the dredge went below 15 feet mean low gulf. A close scrutiny of the testimony of plaintiff’s commercial diver, Mr. Elliot, shows that in 1956 he personally installed this particular cable in a trench which he dug 5 feet in depth across the bottom of the bed of the canal. The procedure used was that first the cable was laid down on the bed of the canal and then Mr. Elliot started on one side and *329 jetted the trench and “tramped the cable down in the bottom of the ditch” as he went along. The jetted spoil built up behind him in the trench as he proceeded across the canal. Elliot stated that navigation in the channel would cause the trench to be completely filled in a few days and he was satisfied that the cable was buried at the authorized depth. Actually, his testimony leaves something to be desired in the way of positive evidence that the cable was buried at least 18 feet below mean low gulf. The only thing of which Mr. Elliot appeared to be absolutely certain was that the trench which he cut was 5 feet deep.
Although counsel for plaintiff states in his brief that between the time the cable was installed and the time it was cut, Mr. Elliot checked its depth, the testimony of Mr. Elliot actually shows that although he probed for the cable on one occasion he did not locate it. On the afternoon of the day the cable was cut, .it was not Mr. Elliot, but one of his employees, who actually dived down into the canal and found the severed ends of the cable. Although Elliot testified that his employee found the undisturbed portions of the cable in the original position in which he had installed it in 1956, the way in which he measured the depth on October 2, 1959, was uncertain. He stated that he took a piece of Y2 inch water pipe, 21 feet in length, and placed one end of it at the depth of the cable and the other end was still 1 foot under the surface of the water. Mr. Elliot tried to get Mr. Wilson, of the Corps of Engineers, to adjust the water level to mean low gulf because Elliot admitted he “didn’t know how to do it, I am going to be honest about it. I am not an engineer.” Mr. Wilson testified that he refused to help Elliot check the depth of the cable in this manner because the pipe Elliot was using “was on a string. I didn’t know whether that pipe was going this way or whether it was hitting the bottom or what. There was no way in the world for me to stand on the top of the bridge and check it.”
We therefore conclude the trial judge was correct in finding that the testimony of plaintiff’s witness, Mr. Elliot, does not preponderate over the testimony of defendant’s witnesses who testified positively that the dredging did not exceed the depth of minus 15 feet mean low gulf.
Defendant has also argued in this court that the doctrine of res ipsa loquitur is applicable. In the recent case of Langlinais v. Geophysical Service, Inc., 237 La. 585, 111 So.2d 781, 784 (La.S.Ct.1959) the court set forth the law of res ipsa loquitur as follows :
“As stated in the comparatively recent case of Northwestern Mutual Fire Association v. Allain, 226 La. 788, 77 So.2d 395, 396, 49 A.L.R.2d 362, “ * * * res ipsa loquitur is a rule of evidence, the applicability of which is to be determined in each case at the conclusion of the trial. When the doctrine of res ipsa loquitur is applicable to a case, the accident which has caused plaintiff’s damage makes out a prima facie case of negligence on the part of the defendant and the burden is then on the defendant to show absence of negligence on his part. * * *
“ ' * * * It is well established in the Louisiana jurisprudence that the doctrine of res ipsa loquitur must be applied to a case if the accident which damaged plaintiff was caused by an agency or instrumentality within the actual or constructive control of the defendant, if the accident is of a kind which ordinarily does not occur in the absence of negligence, and if the evidence as to the true explanation of the accident is more readily accessible to the defendant, than to the plaintiff.’ See also Lykiardopoulo v. New Orleans & C. R., Light & Power Company, 127 La. 309, 53 So. 575, Hake v. Air Reduction Sales Company, 210 La. 810, 28 So.2d 441 and Plunkett v. United Electric Service, 214 La. 145, 36 So. 2d 704, 3 A.L.R.2d 1437.”
*330 Applying the above quoted rule of law to the facts of the instant case, it is our opinion that the mere proof of the accident, that is the cutting of the cable, did not make out a prima facie case that the accident was due to the negligence of the defendant. There were two possible causes of the accident, either defendant’s dredge cut too deep or plaintiff’s cable was too shallow. In order to make out a prima facie case requiring the application of the doctrine of res ipsa loquitur, it was incumbent upon the plaintiff to first prove by a preponderance of the evidence that its cable was buried at a depth of at least 18 feet below mean low tide. For the reasons here-inabove set forth we have concluded that plaintiff has not proved this fact by a preponderance of the evidence and therefore the burden of proof has not shifted to the defendant to show absence of negligence on its part.
A further reason why the doctrine of res ipsa loquitur is not applicable here is that the true explanation of the accident is no more readily accessible to the defendant than it is to the plaintiff. As stated, above, there are two possible explanations for this accident, one, that the dredge cut too deep, and the other, that the cable was buried too shallow. Of course, evidence as to the cutting depth of the dredge is more readily accessible to the defendant, but on the other hand evidence as to the depth at which the cable was buried was certainly more readily accessible to the plaintiff.
In view of our conclusions set out above, we do not find it necessary to consider defendant’s arguments that the doctrine of res ipsa loquitur is inapplicable here because the dredge was not a dangerous instrumentality, and further, because the dredging operations were actually under the control and supervision of the Corps of Engineers.
For the reasons assigned, the judgment appealed from is affirmed. All costs of this apj*al are assessed against the plaintiff.
Affirmed.