*165 Statement of the Case.
MONROE, J.
Plaintiffs seek to recover damages for the use of their minor son, and on their own account, resulting from an injury sustained by the minor whilst in the defendant’s employ, and, as they allege, through defendant’s negligence and disregard of the law. Defendant, after excepting on several grounds, denies the averments of the petition, and alleges that the injury sustained by the minor was due to his own negligent act. It appears from the evidence that at the time of the .accident that caused the injury complained of (August 15, 1907) the minor was about 11 years and 1 month old, but large for his. age, wearing the clothing usually worn by boys of 15, and fairly intelligent. He lives, with his parents, on Clouet •street, between Chartres and Royal, and on the opposite side of the street defendant operated, and for a number of years has operated, a moss factory, in which the minor’s two elder brothers (one of them a major) were, or had been, employed. The minor, •Clarence, was enjoying a vacation from -school during the month of August, and being, as we infer from the testimony, an active lad, made repeated requests of the foreman of the moss factory to give him work, ,-stating on one occasion, in the presence of his brother George, that he was 15 years of age, and, on being corrected by George, asserting, without further correction, that he was 14, which latter statement he made on another occasion in the presence of a number of the employes of the factory. Defendant appears to have known the law upon the .subject of the employment of minors, and had a further interest in the matter, in that he was insured against accidents to his employes by a policy which did not cover an ac•cident to a minor under 12 years of age, and he had specifically instructed his foreman to .employ no small boys. He had another business, however, and spent very little time at the moss factory, the operatives in which were employed and discharged by the foreman, and he knew nothing of the employment or age of Clarence Darsam. The foreman apparently thought that the age limit with regard to the employment of minors in factories was 14 years, and the evidence satisfies us that, if he had not believed that plaintiff’s son had attained that age, he would not have employed him. As it was, the boy was persistent and seemed anxious to earn something, and on two successive Saturdays the foreman employed him in moving dust in the yard with a wheelbarrow. On one of -these occasions the father, in passing, inquired what he was doing, and, being told, said he did not think he could stand the dust. He says that he told the foreman that he did not want the boy to work about the factory, but the foreman denies it, and testifies, without contradiction, that the boy’s lunch was sent to him from home — referring as we understand, to the subsequent period of employment, between August iOth and August 15th — and we hardly think that would have happened without the knowledge of his parents, nor do we find any sufficient reason for believing that the foreman would have employed him against his father’s expressed wish. When he applied, on August 10th, he was assigned to about as light and as saie work as is done in the factory. The moss, it appears, is brought into the upper story of the building upon an automatic carrier, consisting of what may be called a belt of slats, which passes up an inclined plane, over and around a wheel raised some five feet above the floor, and, in so doing, deposits the moss on the floor in front of the' wheel. The incline up which the carrier moves is built alongside of and about 16 inches from the wall of the building, and the power which drives the apparatus is communicated to the carrier wheel through a driving wheel and two cogwheels, geared together in the space *167 between the end of the carrier wheel and the wall, the driving wheel getting its power from a steam engine, through a rope, and having a grooved or hollowed periphery in which the rope works. The driving wheel, which is nearest the wall, is 26 inches in diameter, and on the same axle is a cogwheel, 4% inches in diameter, on which is geared (on the further side from the front of the carrier wheel) the other cogwheel, 30 inches in diameter. In order to prevent the moss and dirt brought up on the carrier from falling into the cogs, and possibly by way of precaution against accidents, defendant caused to be built a wooden partition separating the driving wheel and cogwheels from the carrier and from the end of the carrier wheel, and projecting to the front edgewise, so that a person standing immediately before the carrier wheel would be sate from contact with the others. And it was to that position that Clarence Darsam was assigned; it being his duty to take up with a pitchfork the-moss as the carrier brought it over the wheel and dropped it on the floor, and to distribute it among a number of girls and women who were standing within a few feet of him, and whose function it was to take the moss in their hands and shake it apart.
Being asked by plaintiff’s counsel:
“Clarence, how did you get hurt on that day? 1-Iow did you come to get hurt?” he replied: “IVell, I was standing this way, and when I wanted to throw the moss, it all happened so quick that I didn’t know what had hold of me, and- when I hollered, Mr. Monroe [the foreman] came there with a crowbar and stopped the machine, and took my hand out and throwed the wheel up. * * * Q. What was it that caught your hand? A. Well, I don’t know exactly what it was, whether it was the flywheel or the cogwheel. Q. And when Mr. Monroe came and took your hand out, where was your hand? A. It was in the cogwheels., * * * Q. Clarence, what made your hand' get caught between the cogwheels? A. It was my sleeve. Q. Did you have your coat on at the time? A. No, sir, no coat. Q. Well, what did you have on? A. I had on a red shirt, and the sleeve was a big sleeve, and it caught.”
On his cross-examination, his attention was called to the fact that the cogs lie back some 15% inches, in the narrow space between the driving wheel and the end of the carrier wheel, and that the rope on the driving wheel lies imbedded in its grooved periphery, and he could give no explanation further than to say that he had-a button on his shirt sleeve, and that it might have been caught between the driving wheel and the-rope, as the latter was loose. Being asked whether he knew that the button was caught, he replied that he did not; the sum and substance of his testimony being that he-knew nothing about the accident, save that he found his hand between the cogwheels,where (it may be here stated) it was very badly mangled, necessitating the loss of the-thumb, with the first and second fingers and part of the palm. He was taken to the hospital, and two of the young women who-were working with him at the time called on him, about a week later, and they testify as follows:
Miss Louise Macke:
“I asked 'him how did he get his hand hurt, and he said he put his hand there, and he never thought he was going to get his hand hurt.”
Mrs. Louise Sehlusser:
“I asked him how he did that, and he said he* put his hand behind there. Q. That he put his hand in where? A. In the cogwheels. Q. That is what Clarence told you? A. Yes, sir.”
Being questioned in regard to the statements thus attributed to him, the minor admitted that the witnesses called on him and that he had a conversation with them, but, being asked, “Did you have any conversation at all with those young ladies as to how this-accident happened?” he replied, “No, sir.”
That the accident could not have happened as the boy says it did, or in any other way save by his deliberately meddling with the-driving wheel or cogwheels, if the partition to which we have referred was in position, is *169 made manifest by all the testimony, and the ■story told by the boy rests upon the premise that the partition was not in position. The •carpenter who built the partition (in 1904) testified that, whilst he could not absolutely identify the boards, they appeared to be the .same that he had used. Fourteen other witnesses testified, positively, that the partition was there on the day of the accident, and •had been there, just as it was on that day, from the time it was built, or for a year .or two years, as they happened to know the fact.
Plaintiff seems to have conceived the idea ■that three new planks of white pine were put in after the accident, and the photographer •employed by him was probably impressed with his,view of the matter, as he testified that, when he took his photographs (shortly .after those for defendant had been taken), the three planks looked to him like pieces of •dry goods cases. Defendant, however, called several witnesses who testified that the .planks are of yellow pine, and, as it would have been easy matter to have shown that they were wrong, if such had been the case, •we assume that plaintiffs, who made no attempt to disprove their statements, concluded that they were right. Apart from that, the testimony adduced on behalf of plaintiffs to ■show that the partition was not in its place .at the time of the accident is conflicting, and withal insufficient, both in volume and character, to overcome that adduced by defendant. We therefore conclude, as a matter of fact, that the partition was in its place when .the accident occurred.
There was a verdict and judgment in favor ,of defendant, and plaintiffs have appealed.
Opinion.
Having found, as facts, that the minor, -whilst engaged in the discharge of the duty to which he was assigned, could not have come in contact with the driving wheel or cogwheels, and hence could not have been injured by them, if the partition, represented in the photographs offered in evidence, was in position, and that the partition was in position at the time of and prior to the accident, we are now to inquire whether defendant should be held liable "upon any other basis than that of its alleged negligence in failing to provide one of its employes with a safe place in which to do his work.
Counsel for plaintiffs refers the court to the provisions of Act No. 34, p. 50, of 1900, which, so far as they are pertinent to the issue to be determined, read:
“Section 1. * * * That no boy, under the age of twelve years, and no girl, under the age of fourteen years, shall be employed in any factory, mill.” etc.
“Sec. 7. * * * That any person who shall violate any of the provisions of this act shall be deemed guilty of an offense for each violation thereof, and, upon conviction of the same, shall be punished by a fine, * * * or by an imprisonment,” etc.
From this law he argues that, by the mere fact of his employing the minor, Clarence Darsam, in his factory, defendant was guilty of negligence which renders him civilly liable for any. injury which the minor may have sustained whilst so employed, and this whether there was any proximate causal connection between the employment and the injury or not, and he cites, among others, the following authority, to wit:
“Status of Children Employed in Violation of Statute. — Upon this subject, one idea is that the hiring of a boy under twelve years of age, in violation of a statute declaring it to be a misdemeanor, constitutes negligence per se, such as will render the employer liable for all injuries suffered in consequence of and in course of the employment. Another view is that to employ a child, in violation of such statute, to operate a dangerous machine, is evidence of negligence, in case the child is injured in so working, because the statute indicates that such children are unfit, by reason of their immaturity and indiscretion, to be so employed.”
*171 The remaining portion of the section thus quoted (as supplied by defendant’s counsel) reads:
“But the view which more nearly comports with judicial analogies is that such unlawful employment of a child does not, per se, constitute negligence which will render the employer liable for injuries to the child, where such employment is not the direct or proximate cause of the injury.” Thompson on Negligence (2d. Ed.) vol. 4, § 3827.
And the view of the learned author, as thus expressed, is sustained by a consensus of opinion. Thus:
“When it appears that the violation of a statute, ordinance, or municipal regulation was a contributing cause to produce the injury complained of, then such statute * * * is competent evidence to charge the defendant with negligence. But such evidence is incompetent, as being immaterial, if the violation of the statute did not contribute to produce the injury.” Buswell on Personal Injuries (2d Ed.) 185, citing Wakefield v. Conn. & P. R., 37 Vt. 330, 86 Am. Dec. 711; Steves v. Oswego & Syracuse R. R., 18 N. Y. 422; Brooks v. Buffalo & N. F. R. R., 25 Barb. (N. Y.) 600; Dascamb v. Buffalo & State Line R. R., 27 Barb. (N. Y.) 221; Evans v. Am. Iron Tube Co. (C. C.) 43 Fed. 519.
“The fact that defendant’s violation of duty consists in the violation of a statute will not relieve the plaintiff of the obligation of showing that he was in the exercise of due care” — citing Taylor v. Carew Mfg. Co., 143 Mass. 470, 10 N. E. 308; Nosler v. Chicago, B. & Q. R. R., 73 Iowa, 268, 34 N. W. 850; Ryall v. Cent. Pac. R. R., 76 Cal. 474, 18 Pac. 430; Hudson v. Wabash R. R., 101 Mo. 13, 14 S. W. 15.
“Thus the violation, by the employer, of a statute requiring cogs in factories to be properly guarded, does not render the employer liable for an injury to an employe by coming in contact with unguarded cogs, when the danger was obvious and the employé assumed the risk of it” — citing E. S. Higgins Carpet Co. v. O’Keefe, 79 Fed. 900, 25 C. C. A. 220, 51 U. S. App. 74; Buswell on Personal Injuries (2d Ed.) pp. 187, 188.
“In many jurisdictions statutes have been enacted which impose upon masters certain duties in relation to their servants. While it is well settled that the violation of these provisions is negligence per se, and actionable, if injuries are sustained by the servants in consequence thereof, they are nevertheless not so construed as to abrogate the ordinary rules relating to contributory negligence, which is available as a defense, notwithstanding the statutes, unless they are so worded as to leave no doubt that this defense is to be excluded.” A. & E. Enc. of Law (2d Ed.) vol. 20, p. 151. See, also, 26 Cyc. p. 1091.
The doctrine thus stated has been recognized by this court in Clements v. La. Electric Light Co., 44 La. Ann. 692, 11 South. 51, 16 L. R. A. 43, 32 Am. St. Rep. 348, Hailey v. Texas & P. R. Co., 113 La. 533, 37 South. 131, and Lopes v. Sahuque, 114 La. 1004, 38 South. 810. In McCloughry v. Finney, 37 La. Ann. 31 (relied on by plaintiff), defendant, a dealer in Western produce, had piled a lot of grain in sacks on the banquette, in-violation of a city ordinance, and this court having, in the original opinion, used some language which suggested the idea that he thereby became liable for an injury sustained by a boy by reason of the falling of the sacks, and without reference to any contributory negligence of which the boy might have been guilty, a rehearing was applied for, in refusing which, Manning, C. J., said:
“A re-examination of the record confirms us-in the opinion, expressed before, that there is no proof of contributory negligence, and, therefore, there is no need to say what effect proof of contributory negligence would have.”
In the cases of Queen v. Dayton Coal & Iron Co., 95 Tenn. 458, 32 S. W. 460, 30 L. R. A. 82, 49 Am. St. Rep. 935, and Marino v. Lehmaier, 173 N. Y. 530, 66 N. E. 572, 61 L. R. A. 811, the boys, on whose account the damages were claimed, were both injured whilst in the actual discharge of the duties for which they were employed in violation of prohibitory statutes, and hence sustained their injuries by reason of such employment. In the instant case, considered without reference to his status as a minor, the employment of Clarence Darsam had no more causal connection with the injury sustained by him than it would have had if, employed to devote an hour a day to the copying or addressing of letters in the office, he had of his own motion undertaken to investigate some curious machine in a remote part of the building, and had been injured in so doing.
Moreover, it will be noted that we have *173 found as a fact that defendant’s foreman employed the boy in the belief, superinduced by the boy’s own representations, his appearance, and the apparent acquiescence of his family, that he was at least 14 years of age, a circumstance which will be borne in mind in the consideration of the remaining question : Was the danger that, being in the factory, he might curiously put his fingers between cogwheels which -were not connected with his employment ánd with which he had no concern, a danger unsuitable to or beyond his apparent capacity? The generally accepted view in regard to the relations between minors and their employers is, as we think, correctly stated as follows:
“Persons who employ children to work with or about dangerous machinery, or in dangerous places, should anticipate that they will exercise only such judgment, discretion, and care as is usual among children of the same age under similar circumstances, and are bound to use due care, having regard to their age and experience, to protect them from dangers incident to the situation in which they are placed; and as a reasonable precaution, in the exercise of such care in that behalf, it is the duty of the employer to so instruct such employés concerning the dangers connected with their employment which, from their youth and inexperience, they may not or are presumed not to appreciate or comprehend, that they may, by the exercise of such care as ought reasonably to be expected of them, guard against and avoid injuries therefrom. Yet the mere fact that the servant is a minor does not of itself affect the liability of the principal or master as to obvious defects and dangers, unless the minor was a child of unsuitable age to be exposed to unsuitable risks in a hazardous business. If a minor engages to work, the risks of the business are incident to the work, so far as he is competent to comprehend and appreciate them. And it can make no difference in the application of the rule whether such employment was with or without the consent of the parent.” Master’s Liability for Injury to Servants: Bailey, pp. 114, 115. See, also, Kinkead, Torts, vol. 1, p. 325; Labatt, Master & Servant, vol. 1, § 348 (p. 890); A. & E. Enc. of Law (2d Ed.) pp. 406, 407, 409.
Defendant’s foreman says, in his testimony, that he -told the minor, Clarence—
“to stay there” (in a perfectly safe place) “and to throw that moss over there” (a safe occupation) “and keep away from tlie end, from the machine, from everything else. * * * I ran him away when he came around the gin, one time, not only once or twice, but I told him to go and stand behind the carrier wheel, in his own position, * * * at the place where he was working.”
It is true that the boy denies that he received such instructions, but we think the foreman is corroborated, in that the other employés who were working about the carrier girls and women unite in testifying that they all received such instructions, and it is improbable that the foreman would have made an exception in the case of the boy. Beyond that, it seems to us that an' intelligent boy, in his twelfth year, who has attended school sufficiently to have acquired the rudiments of a' common-school education, who has lived across the street from a factory in which his older brothers were employed, and about which he has played and worked, may be assumed to have sufficient capacity to appreciate a danger so obvious as that involved in coming in contact with plainly exposed revolving cogwheels. In fact, he himself admits that he knew the danger. Upon the whole, we find no error in the verdict and judgment appealed from, and they are, accordingly, affirmed, at the cost of the appellant. '