On Rehearing.
PROYOSTY, J.
The plaintiff’s son was injured while at his work in the employ of the defendant company. He was then 13 years and 10 months old, and was earning $1.75 a day, which he turned over to his mother. The plaintiff sues in her own behalf for the loss of the services of the child, for her mental suffering caused by his being injured, and for certain expenses incurred in his treatment, and in behalf of the child, for his pain and suffering and for the reduction in his earning capacity.
The boy had been working for the defendant company for several months as a water carrier, when he was assigned to the work of heating rivets, on a platform at the top of an iron tank in course of construction, and throwing these heated rivets down to the workmen below. This tank was 42x32 feet, and was open or uncovered at top. This platform was 26 feet above the ground, and consisted of four planks, 2 inches thick and 1 foot wide, laid across the northeast corner of the top of the tank. There was no guard or other protection to prevent one inadvertently moving beyond its edge from falling to the ground. At the other corner of the same north side of the tank was another similar platform. These platforms, at their nearest point, which was where their ends rested upon the top of the north side of the tank, were 4 to 5 feet apart; and the top of the side of the tank upon which they rested, was 3 inches wide. The heated rivets are handled with tongs. These soften from the heat, and lose their shape, and have to be reshaped. This had happened to the pair which the boy was using. Upon this other platform near at hand lay a good pair, which another boy had been using and had left there. In order to get this good pair the boy stepped over to this other platform, and, while returning, after having secured the tongs, fell to the ground and was injured. He says one of the loose planks tilted under his weight. Defendant contends that his shoe, which was defective — a part of the *67 sole detached — caught in or against, something, and tripped him. From the statement of the boy, that one of the planks tilted with him, the conclusion would be that he fell while he was still on the platform and not while in the act of stepping over to his own platform. There is absolutely nothing to show that it was while stepping over to his own platform that he fell. For securing the employment, the boy represented himself to be 16 years old, as his size indicated, and the defendant would not have employed him in this work if his real age had been known.
The faults attributed to the defendant company are that the platform was defectively constructed, the planks not being fastened, but left loose to be kept in place solely by their weight, and that the employing of the boy at this dangerous work was in violation of the child labor law. Act 301 of 1908, p. 453.
We do not find that the platform was defectively constructed. Fastening these heavy planks was not necessary; there was nothing to cause them to move, they were merely to be walked or stood upon, and the weight of a man at the projecting end of one of them would not have been sufficient to cause the one thus stood upon to tilt, as was shown by an actual demonstration in the lower court.
[2] The violation of the child labor law, was, however, negligence on the part of the defendant, and under the circumstances of the case, we have concluded, upon further consideration, makes defendant liable.
This law is positive in its prohibition of’ the employment of children; it is absolute in its terms; allows of no exceptions or excuses. And if that is said to be a hard law in a case like the present where there was no intention to violate the law, and some care was used to avoid doing so, the answer to that objection is found in St. Louis & C. R. Co. v. Taylor, 210 U. S. 281, 28 Sup. Ct. 616, 52 L. Ed. 1061, and it is that such is the law. Defendant’s good faith, therefore, and precautions in employing the boy and its humanitarianism after the injury, can avail nothing except to hold down the quantum of damages to strictly actual loss; especially that the defendant might have protected itself by requiring the production of the certificate of age elaborately provided for in said child labor law.
[3] We need not in this case pass upon the question whether contributory negligence on the part of the boy would have precluded recovery, as we do not find that he was guilty of negligence. We will simply say that we consider that question as being still an open one in our jurisprudence. It was not passed upon in Darsam v. Kohlmann, 123 La. 172,[1] the doctrine of which is simply that the injury to the child is actionable only when it has been the natural or probable or proximate consequence of the employment. In Dalberni v. N. O. Can. Co., 139 La. 49, 71 South. 214, the question was not raised, and was not expressly passed on. The question submitted for decision was as to whether the 16 year old girl had been negligent, not as to whether she would not have been entitled to recovery even if negligent. The reason children are forbidden to be employed in dangerous occupations being that they are presumed to be incapable of taking care of themselves, it would seem to be illogical to hold them responsible for their negligence. However, the question does not necessarily arise in this case, and hence need not be considered.
In this case we absolve the boy from negligence because we think that his stepping across this narrow space to get this tool which he needed in his work, and which thus lay near at hand, was the natural, obvious, and right thing to do. It is the thing which any sensible man in his place would have *69 done. This space could be stepped across easily by placing one foot upon the 3-inch wide top of the side of the tank and reaching over with the other foot. In fact, so far as we know, it was not in stepping across that the boy fell. He says not, and while the contention of the defendant is that he fell as the result of his shoe getting caught in, or striking against, something, defendant does not undertake to show what this something was, or that the fall occurred while the boy was actually stepping across the intervening space.
[4] The duty imposed by said statute upon the defendant not to employ a child in a dangerous occupation is thus imposed for the protection of the child and in his interest and that of society in general, not in the interest of the parent of the child. The defendant owed no duty therefore to the mother of the child, and has been guilty of no fault toward her which could serve as a basis on her part for a claim of damages. In fact she, knowing the nonage of the child, and consenting nevertheless to his being employed in violation of law, was more at fault than defendant, .who acted in ignorance; and, therefore, to allow her damages in this case would be to make defendant pay her for her own fault more than for its own.
[5, 7] Besides the defense of the contributory negligence of the child, defendant urges that the employment did not come within the child labor law, because this oil refinery plant (occupying acres of ground and employing thousands of persons) is not one of the establishments specifically named by said statute. Said statute, after naming every occupation one could well think of, undesirable for a child, adds, “or any other occupation not herein enumerated which may be deemed unhealthful or dangerous.” The fall of this unfortunate boy was not necessary to inform us that working upon a 4-foot, wide-open, unguarded platform 26 feet from the ground is a dangerous occupation.
[6] Of the nature of the injuries to the boy, the following, taken from the brief of his counsel, is a fair statement: [1]
“The fall resulted in a simple fracture of the left femur, a compound fracture of the right femur, injury to the right knee and right foot, and considerable lacerations on the chin and mouth. He was picked up by three members of his crew and carried to defendant’s emergency hospital, where he was first ministered to by Dr. Ford and later by Dr. Kemp, both of whom were in the employ of defendant; was later removed to the Baton Rouge Sanitarium, where his wounds were stitched up and his bones reset. Ho remained in the Baton Rouge Sanitarium for about six weeks, when it was found that there was imperfect union in his right femur. He was then sent to the Touro Infirmary in New Orleans, where a metal splint was applied to the bones. Subsequently two operations were performed on the right leg to view the plate and later to remove it. He was confined to his bed about four months, had to walk with crutches for three months, and was unable to do any work for 7% months after his injury.
“There is fairly good union in the left leg, but the limb is crooked and bends backwards. There-is imperfect or incomplete union in the right leg, and the limb is crooked, being bowed forward-There is a large and abnormal callous at the-break in the right leg, which is still sore and painful and is apparently growing. The right knee is stiff so that the leg can neither be extended to the normal length or bent beyond 100 degrees. The chin is scarred, and the mouth is disfigured.”
At the time of the trial, 1 year after the accident, the boy had been able to go back to work in the employ of defendant as water carrier, and had worked for three months. He still had pains, however, in his leg and foot. One of the physicians was asked:
“Q. Are his limbs so weakened, crooked, and misshapen, his gait so uncertain and shuffling, that he suffers now and will continue to suffer for the balance of his life great annoyance, embarrassment, and humiliation?”
And he answered:
“A. I don’t know any better answer than to offer the boy himself. He is seated right there. I do not think so.”
We have to conclude from this that the-appearance of the boy is not much changed- *71 The evidence leaves doubtful whether his limbs will not be as serviceable to him as they were before, provided the callous on the right leg- does not keep on growing and does not become malignant. A judgment, however, cannot be based on this possibility. The sufferings of the boy have certainly been very great and of long duration. The deformity in the legs, and the inconvenience resulting from the slight stiffness of one of them, will remain with him all his life. We have concluded that a judgment for $5,000 would do justice in the case.
The judgment appealed from is therefore affirmed in so far as rejecting the demand of Mrs. Mattie S. Alexander in her own behalf, and is set aside in so far as rejecting her demand as tutrix; and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiff, Mrs. Mattie S. Alexander, in her capacity of natural tutrix of her minor son, Lucius Alexander, against the defendant, the Standard Oil Company of Louisiana, in the sum of $5,000, with legal interest from this date, and that the defendant pay the costs of this suit.

 48 South. 781, 20 L. R. A. (N. S.) 881.