(37 South. 131.)

No. 15,178.

HAILEY v. TEXAS & P. RY. CO.*

(June 20, 1904.)

INJURY TO BRAKEMAN—ASSUMPTION OF RISKS —WARNING—CONTRIBUTORY NEGLIGENCE.

1. The brakeman assumed ordinary risks, not risks arising from defendant's failure to erect "telltales," or "warning signals," at a distance of 150 feet from the approaches of an overhead bridge, in accordance with requirement of Act No. 39, p. 51, of 1882.

2. The duty devolves upon the employer to unequivocally warn the servant.

3. It is not shown that the employé failed to exercise his senses, and that, knowing of the danger, he stood erect and met with the accident which caused his death.

4. He ducked his head, not in time to avoid the fatal blow. He was entitled to the statutory warning.

5. The cars are not all of the same height. The ordinary car could pass the bridge overhead without the necessity of a stoop by the brakeman. The furniture car on which plaintiff was riding is several feet higher than the ordinary car. The testimony does not show that he had before passed the overhead bridge on a furniture car. The bridge was not so low that the brakeman had to stoop every time he passed.

6. In view of the number of low cars, as compared to the highest, it will not be inferred that he had such knowledge as relieves the defendant from liability.

7. The accident would not have occurred if the employé had been on an ordinary freight car, and nothing shows that he knew that it was sometimes necessary to stoop because the furniture cars are higher.

8. It is not certain, by any means, that persons working on a train and passing objects, such as an overhead bridge, in rapid motion, with attention fixed on their work, should be charged with knowledge, under the circumstances of the case, which relieved the employer, although under obligation to provide a warning.

(Syllabus by the Court.)

Appeal from First Judicial District Court, Parish of Caddo; Thomas Fletcher Bell, Judge.

Action by Annie Hailey against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Modified.

---

*Rehearing denied June 30, 1904.

Wise, Randolph & Rendall (Howe, Spencer & Cocke, of counsel), for appellant. Scott & Jones and Hall & Jack, for appellee.

BREAUX, C. J. Plaintiff instituted this suit against the defendant, in her own right to recover the sum of $7,000, and as natural tutrix to recover the further sum of $8,000, with legal interest. The jury returned a verdict for $10,500. One of the jurors did not concur in the verdict.

The defendant prosecutes this appeal.

The facts of the case are that the late husband of plaintiff, J. M. Hailey, aged 42 years, was a switchman of the defendant company at $60 per month.

He applied in writing for the employment, and in the paper he signed, in answer to questions, he stated that he understood that it is necessary, in operating, for the company to have overhead and turn bridges at certain points on the line, and that he was aware of his exposures to injuries by being knocked off the side or top of the cars, unless he used care to avoid injury, and he agreed to acquaint himself with overhead and turn bridges. He further stated that he agreed not to look to the company, but to his co-employés, for information of any kind regarding danger growing out of the use of machinery and appliances necessary to the proper performance of his duties.

He became an employé of the defendant company on the 24th day of August. His service terminated on the 30th of September. He returned to service for the company on the 2d day of December, 1902, and suffered injury on the 10th following, and died from the effect of these injuries about 8 days thereafter.

On the day that he was hurt, at about 7:30 in the morning, the train on which he was riding was made up of two cars—one a fruit car of ordinary height, and one Kansas City Southern furniture car. This was the first trip on that day.

The deceased was on the top of the second or furniture car. They were going upgrade, and, leaving the lower or house yard on their way to the junction yard, they came to a bridge over Anna street, the only bridge on the run they were making—that is, from the home yard out to the junction, on which they frequently hauled furniture cars; but no witness testified that Hailey, the deceased, ever handled or worked as switchman on one of the furniture cars while it was running.

While passing under the Anna street bridge deceased stooped, not low enough, however, to avoid the bridge. He failed to clear the bridge, and was struck on the head; but it did not knock him off the car. The wound he received showed that he was in a stooping position. The wound was across his head, just above the forehead, half way between the crown of the head and the forehead. He lived about 8 days after he had received the injury which caused his death.

After they had passed the bridge and had gotten into the yard they (employés of defendant) heard groans, and, going up to the top of the high, or furniture, car in question, they found him (the deceased). He had been knocked down while passing under the bridge by the contact of his head with the bridge, as just stated.

The height of this bridge from the top of the rail to the lower edge of the girder of the bridge is 18 feet 4 inches. The cut over which is the bridge is a high cut. It averages 12 feet in height, as it runs zero to a high cut. The height of an ordinary box car from the top of the rail to the running board on the car is about 11½ feet.

The height of a furniture car is 13 feet 9½ inches. The clearance of an ordinary box car while passing under this bridge is about 6 feet 9 inches, and the clearance between a furniture car and the Anna street bridge was 4½ feet. We subjoin a copy of a diagram showing the situation of bridge and measurements made.

The height of cars is not uniform. The measurement given, we understand, is about the average height.

The height of the deceased was 5 feet 8 inches.

This bridge was maintained by the railway company, and we infer that it was also built by the railway in accordance with authority and direction of the authorities of Shreveport.

One of the serious grounds of plaintiff's

CLEARANCE FROM BOTTOM OF STRINGER ON BRIDGE TO TOP OF RAIL = 18.3′
MURPHY ST. BRIDGE CLEARANCE 20.6′.
SPRING ST. BRIDGE CLEARANCE 20.9′.
MEASUREMENT OF BOX CARS FROM TOP OF RAIL TO TOP OF
RUNNING BOARD, AVERAGE CAR = 11.5′ FURNITURE CAR = 13.8′.

complaint is that there were no light ropes or whip lashes suspended at a distance of 150 feet from the approach to the bridge; and in that connection the contention of plaintiff is that there is no evidence that the late husband of plaintiff had at any time passed under the bridge on a furniture car requiring him, for his safety, to stoop or duck his head to escape collision with the bridge, and that the deceased had no knowledge of the danger.

Deceased left his wife and three minor children. He had earned better wages in times past, as he had been a conductor on a railroad. At the time he was injured he was receiving the wages before mentioned.

As relates to the law of this case, we do not attach the greatest importance to the written answers made by plaintiff to written questions propounded to him just prior to his going into service as switchman of the defendant company.

A written application for work may serve some purpose, not to the extent, however, of waiving ordinary diligence and attention of the employer. The state assumes that in enacting a statute, such as Act No. 39, p. 51, of 1882, for the protection of workmen and employés, that the employer will not fail to comply with its requirement.

The title of this act is suggestive of public policy adopted for the protection of human life. It reads: "To protect life and prevent accidents on trains and cars"—and to this end orders ropes, properly knotted, be suspended at a point on the track, the entire width of the track, low enough to warn any train hand by its touch.

This statute was overlooked by defendant, or disregarded. In either case it cannot be concluded that by the written application of the workman as before mentioned he waived or intended to waive the failure of the company to comply with a statute which we think should be considered mandatory in its character.

The bridge was constructed, as we understand, by the company, at a height sanctioned by proper authority, it is true. It none the less devolves upon the company immediately thereafter to comply strictly with the statute, which looked to the protection of its employés. The "telltale" in this case was not put up at all. It certainly was negligence on the part of the company to fail in taking the precaution against accidents plainly laid down in the statute.

In the absence of the statutory warning it becomes necessary, we think, on the part of the defendant company, in order to sustain the plea of plaintiff's knowledge of the danger growing out of the limited clearance, to show beyond question that he was aware of the insufficient clearance to enable him to pass with safety while standing on a furniture car passing under an overhanging bridge.

He was primarily entitled to the warning, as it was intended to notify him of the approaching danger. Not having received the notice, we would not feel justified in assuming that he knew how far he should have stooped to avoid the contact, which resulted in his death. Granted for a moment that there was a miscalculation; that decedent, in consequence, did not stoop sufficiently low—it may be that, had he received the warning intended for the protection of the trainmen on top of a car, he would not have made the miscalculation.

Let us examine into the facts urged by defendant to show that plaintiff was aware of the danger and did not sufficiently seek to avoid it.

In the first place, defendant, seeking to support that contention, says that while at his work he had frequently passed this place. This is true, but here it is proper to consider at this point that there were low or ordinary cars and high furniture cars. The number of the latter was small in comparison with the number of the former. We

understand that there were other switchmen than Hailey on this run. It is not shown by the testimony that he ever was switchman on the high furniture cars. He had frequently, we understand, passed under the bridge on the ordinary cars. We repeat, there is no testimony before us showing that he ever passed this bridge on a high car.

Passing on the ordinary or low cars, as to height, was not of itself necessarily suggestive of the importance of keeping a lookout for the overhead bridge. If "telltales" had been in position, may it not be that the ropes, hanging low and striking him on the body, would have been a reminder to stoop and take no chance by standing.

Defendant, under the statute, owed a duty to plaintiff. Want of compliance on its part was negligence.

We do not think there was contributory negligence on the part of plaintiff; for it does not appear that the danger became known to the decedent in time to avoid the accident, as it might have been, had he received the warning the statute intended.

It is true that the failure to erect the "telltale" or "whipropes" will not excuse negligence on the part of the employé in attempting to cross without stooping, if he is well aware that he should stoop; but if it does not appear that he was aware of the necessity of timely stooping about two feet to be safe, knowledge will not be imputed in the absence of testimony fixing it upon him.

"The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in performing such duties. The employé is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for the operation." R. R. Co. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96.

We are not certain that deceased knew and realized the difference in height between the two cars of the train—the one in front and the other the second, on which he was— sufficiently to have warned him. We have to presume that he had knowledge in order to find negligence against him.

May not the following serve to illustrate: When a pedestrian, in peril because of his obliviousness, is seen upon a track, the railroad company owes it to him to give notice of its trains by whistle, bell, or otherwise.

No such signal is given. The pedestrian is injured. Would the carrier avoid liability by showing that he knew that it passed the spot where he had placed himself every day at about the same hour? Here the switchman had passed the bridge. He passed it on low cars. Can we assume that he would not have taken care of himself, had he been warned as the law requires?

We are brought to the last of the several objections ably and forcibly urged by learned counsel; that is, the quantum of damages. There is testimony before us regarding the expectancy of life of a man in good heatlh, with good habits, at 43 years, whose occupation is not perilous. A great many live over the number of years mentioned, and a great many fall under it.

The average may be correct enough, although even that varies. Railroading is, we are inclined to think, looked upon as a dangerous occupation.

In view of the testimony, we think the amount should be less than allowed by the jury.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the amount of the verdict to $7,500. As amended, the judgment is affirmed, at appellee's costs on appeal.