(50 South. 796.)

No. 17,580.

TATUM v. ROCK ISLAND, A. & L. R. CO.

(Nov. 29, 1909.)

RAILROADS (§§ 381, 387*)—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

It is negligence per se for a traveler to attempt to cross a railroad track a few feet in front of an advancing train, when warned of its approach, and when, by the exercise of the least degree of ordinary care, the imminent danger of the situation could have been discovered. In such a case, the negligence of the party injured, being the proximate cause of the accident, may be urged as a defense by the railroad company, although itself guilty of negligence contributing remotely to the happening of the accident.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1293, 1296, 1314–1316; Dec. Dig. §§ 381, 387.*]

(Syllabus by the Court.)

Appeal from Fourth Judicial District Court, Parish of Union; R. B. Hawkins, Judge.

Action by R. M. Tatum, tutor, against the Rock Island, Arkansas & Louisiana Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed, and suit dismissed.

Thos. S. Buzbee and Barksdale & Barksdale, for appellant. Frederick F. Preaus and Clifton Mathews, for appellee.

LAND, J. Plaintiff, representing his minor son, sued the defendants for $20,000 damages for personal injuries sustained by the minor's mother, and for her resulting death, caused by the alleged negligence of the defendants in the operation of one of their freight trains.

There was judgment in favor of the plaintiff for $2,000 against the Chicago, Rock Island & Pacific Railway Company, and there was judgment in favor of the Rock Island, Arkansas & Louisiana Railroad Company rejecting plaintiff's demand as against said corporation.

The Rock Island & Pacific Railway Company (hereinafter referred to as the defendant) has appealed, and the plaintiff has joined in the appeal by answer, and prayed for an amendment of the judgment by increasing the amount to the sum claimed in the petition.

Mrs. Martha J. Tatum, wife of R. M. Tatum, and the mother of the minor, Henry G. Tatum, was on January 18, 1908, struck by a freight locomotive of the defendant company, and mortally wounded. She died on January 31, 1908. The accident happened at the station of Lillie about 6:15 p. m., and as Mrs. Tatum was attempting to cross the track immediately in front of the locomotive.

It is charged, and admitted, that the said locomotive had no headlight burning when it passed the station.

It is further charged that defendant was negligent in not sounding either the whistle or bell as the train approached said crossing, and in not stopping or slacking its speed while passing through said town.

The defense is a denial of the alleged charges of negligence and a plea of contributory negligence.

Lillie is a small station on the defendant railroad. It is not an incorporated town or village. The railroad depot, a few stores, houses, and other buildings are situated on the west side of the defendant's track. The only structures on the east side are a cotton seed warehouse, and a boarding house kept by one Mrs. Buckley. A trail or pathway about 25 paces long led from Mrs. Buckley's to the switch track at a point some 75 yards south of the depot. Thence pedestrians used one of the tracks or the space between them in going to the station house.

In the afternoon of January 18, 1908, Mr.

and Mrs. R. M. Tatum and their daughter-in-law, Mrs. P. A. Tatum, came to Lillie for the purpose of taking the north-bound passenger train. On being told that the train was reported as 40 minutes late, the three went over to Mrs. Buckley's to get supper. There they remained about one hour. Immediately after the party had finished supper, the whistle of an approaching train was heard. Some one at the table remarked that it was the passenger train, but another said it was a freight train. The Tatums hurried out of the house, and along the path towards the tracks. Mrs. P. A. Tatum led, followed by Mrs. R. M. Tatum, and her husband brought up the rear. On reaching the switch track, Mrs. P. A. Tatum, seeing that it was a freight train without a headlight, stopped, and turning around, saw her mother-in-law running about 40 feet behind. Mrs. P. A. Tatum testified in part as follows:

"She was running, and I told her that it was no use to try to get across; that it was a freight. I thought she stopped, but she did not hear me, and I supposed she stopped. She passed right back of me. Uncle Dick (Mr. R. M. Tatum) was behind her, and I turned around and told him that it was a freight; that there was no use to try to cross. My back was to her. * * * I thought she heard what I said.

"Q. She was really going across the track before you knew she was going to try to cross, was she not?

"A. Yes, sir.

"Q. She was running directly across the track, was she not?

"A. Well, she was running pretty fast, and I don't know whether she was going directly across or not. She was crossing the track when I saw her.

"Q. The last you saw of her before she crossed was she not jumping on the track, or jumping across the track, with her skirts lifted or gathered up, in the act of jumping?

"A. Yes, sir; she was in the act of making a leap.

"Q. Did you see her when she ran across the first track?

"A. No, sir; I did not see till she got on this track that the train was on.

"Q. She was on the first track when you turned around to speak to Mr. Tatum?

"A. Yes, sir."

Mr. R. M. Tatum heard the whistle, and, when he reached Mrs. Buckley's gate, saw the lights on the rear end of the train, but supposed that they were on the locomotive, and that his party would have "plenty of time to get ahead of the train and get to the depot." Mr. Tatum intended to go to the tracks, and thence up to the tracks to the station house. When Mr. Tatum reached the first track, he saw a freight train passing. When the train passed, his daughter-in-law crossed and found Mrs. Tatum lying on her back. Mr. Tatum testified that his wife was the first to leave the boarding house, and it does not appear from his evidence that he saw her afterwards until she was found lying on the ground beyond the main track. When he first saw the lights on the train, he supposed that they were 75 or 100 yards away and he had plenty of time to cross the track. Supposing that the lights were on the locomotive of a passenger train, Mr. Tatum and his party undertook to reach and cross the track before the train arrived at a point opposite the path they were traveling. Mrs. P. A. Tatum realized her mistake in time to save herself and Mr. Tatum. But unfortunately Mrs. R. M. Tatum did not hear or heed the warning given by her daughter-in-law, and, without stopping or looking, attempted to rush across the track immediately in front of the locomotive.

Mr. Tatum and Mrs. P. A. Tatum heard the train, and saw it before they reached the edge of the railroad cut. They must have perceived that the approaching train had no headlight burning. They supposed, without any good reasons, that the colored lights on the rear end of the caboose were on the locomotive. As passenger coaches are lighted at night, the absence of such customary lights should have warned them that it was a freight train. A number of witnesses who had the same opportunity of observation perceived without difficulty that a freight train was approaching. They saw the box cars. It is therefore a fair inference that the Ta-

tum party paid little or no attention to the in-coming train.

Mr. Williams, a witness for the plaintiff, saw the Tatum party approach the track, and one of them run from the side track on to the main track and try to cross ahead of the train.

Mrs. Buckley, when the whistle sounded, remarked that it was the passenger train, but, on going out on the front porch, saw at once the box cars and the men in the cab.

Mrs. Buckley testified that Mr. Tatum and Mrs. P. A. Tatum were at the gate when Mrs. R. M. Tatum said, "Dick and Cad are going to leave me," and that, on being told that they were at the gate waiting for her, she ran out of the gate, and kept running as long as the witnesses could see her.

Mrs. Lee was at Mrs. Buckley's on the occasion in question. On hearing the whistle, she remarked that it was a freight train, and, on going to the porch as the Tatums were leaving, she saw the box cars and locomotive. She saw Mr. Tatum and Mrs. P. A. Tatum at the gate and heard Mrs. R. M. Tatum say, "Dick and Cad have left me," and saw the party leave, and go towards the tracks.

The engineer and brakeman testified that they were running an extra freight on the schedule of the belated passenger train; that the electric headlight had gone out, and they had neither the tools nor the time to repair the appliances; that on approaching the station of Lillie the whistle was sounded and the bell rung while passing through; that the usual danger lights were on the rear end of the caboose, and two white lights on the locomotive; that the brakeman was performing the duties of the fireman, who at the time was feeding the furnace; and that the trainmen did not see the Tatum party, and knew nothing of the accident at the time.

Plaintiff's case, as disclosed by the allega-tions of the petition, is not supported by the evidence. The deceased did not, as alleged, stop, look, and listen before attempting to cross the main track of the railroad. The train, instead of being apparently several hundred yards distant, as alleged, was within a few feet of the deceased, when she attempted to jump across the track. If she had looked, she would have seen the train. If she had listened, she would have heard the noise made by the locomotive and the cars. The truth seems to be that the deceased left Mrs. Buckley's obsessed with the fear of being left, and that she commenced running and continued to run until she was struck by the locomotive. She seemed to be oblivious of her surroundings, and did not exercise her faculties of sight and hearing, although she knew that a train had whistled for the station, and was approaching the crossing. The deceased was not blind or deaf. The most that can be said is that her faculties originally normal had been impaired by age. The deceased was out of all danger of contact with the approaching train, and could have avoided the injury by the exercise of the least degree of ordinary care. Her negligence was the proximate cause of the accident, and bars recovery, although the defendant may have been guilty of antecedent or concurrent negligence.

We make the following extract from a standard work on the subject of negligence:

"1666. Traveller thrusting himself in front of an advancing engine or train—

"Where the case of the traveller's contributory negligence in this situation is clear as a matter of law, the railroad company may urge this as a defense although itself violating a statutory regulation at the time of the accident."

See Thompson's Commentaries, etc.; White Supplement of 1907. See, also, Heebe v. N. O. & C. R. R. Light & Power Co., 110 La. 970, 35 South. 251, and Dieck v. N. O. City & Lake R. R. Co., 51 La. Ann. 262, 25 South. 71.

As the deceased could have avoided the accident by the exercise of the least degree of ordinary care, it is useless to inquire into the particular acts of negligence charged against the defendant, as none of them, if established, would affect the result.

The case, we think, is clearly with the defendant on the law and the facts.

It is therefore ordered that the judgment below be reversed, and it is now ordered that plaintiff's suit be dismissed, with costs in both courts.