LAND, J.
This is an action for damages for personal injuries resulting from a collision between one of defendant’s trains and an electric street car, which on the occasion was being operated by the plaintiff as motorman.
Negligence is charged in that the defendant failed to flag the crossing as it was required to do by municipal ordinance, was running its train at an excessive and dangerous rate of speed, and failed to give proper signals and warning of the approach of the train.
Defendant for answer pleaded the general issue and contributory negligence, and especially in that the plaintiff failed to obey and observe the rule of the municipal street railway, requiring all street cars to come to a full stop upon approaching all railroad crossings, and not to proceed on the same until the way was found to be clear.
There were two trials before juries, the *570 first resulting in a mistrial, and the last in a. verdict and judgment in favor of the defendant, from which the plaintiff prosecutes this appeal.
On the occasion of the accident, defendant’s train was backing toward the crossing in question, and did not stop and flag the same as required by an ordinance of the city of Monroe. The negligence of the defendant in this respect was admitted by its counsel in the argument at the bar, and therefore the only question for determination is whether or not the plaintiff was guilty of contributory negligence.
The facts as testified by the plaintiff are stated in his counsels’ brief as follows:
“Plaintiff states that he brought his car to a stop about forty feet south of the crossing; that he could then see about one hundred and fifty feet to the east on the defendant’s track; that he looked, listened, and sounded his gong, heard no indications of an approaching train, got two bells from the conductor, as required by the rules of the city, and then proceeded ahead on five points; that having already looked in the direction from which the train came, he swung in on the curve, and his face was turned almost west and down the track of the defendant; that owing to the' obstructions on the west side of his track he was also bound to keep a watch on that end as well, and when he looked back again the train was within fifty to one hundred feet of him; that he attempted to stop immediately, within about fifteen feet of the crossing, but on account of the grease on the rails, wheels, and brakes he saw that he would be forced on the crossing, and then fed his motor up to seven points in an effort to clear the crossing sufficiently to avoid injury to himself. This he failed to do, and was struck by the oncoming train.”
The street railway belongs to the city of Monroe, and. is operated under a book of rules and regulations for conductors and motormen. This book warns every employe “that ignorance of these rules will excuse no one,” and requires every employs “to always have a copy of them on hand when on duty.” As to crossings the book prescribes the following rules:
“Cars must be brought to a full stop before crossing a steam or street railroad crossing. At steam road crossings conductors must go ahead onto the crossing, and if everything is clear signal the motorman ahead. In no case must the crossing be made contrary to the signal of the conductor or railroad flagman.
“For Motormen
“Run across railroad crossings, through switches and into curves slowly. Under no circumstances are you to cross steam road crossings until your conductor has gone ahead on to the crossing to see if it is clear and given you a signal to come ahead.”
These plain rules were, disregarded by the plaintiff and the conductor on the occasion in question.
The result is that the plaintiff was negligent in not obeying said rules and regulations, and that the defendant’s servants were also negligent in not stopping and flagging the crossing as required by the city ordinance.
Independently of the rules and regulations, the plaintiff was negligent in not stopping his car at the intersection of the two streets where he could have had a plain view of the track of the defendant for several hundred feet on each side of the crossing.
As it was, the plaintiff stopped nis car, or slowed down to nearly a stop, at a point where his view of the track was restricted to about 150 feet. After making excuses for not stopping at the street intersection, such as the curve of the street railway track and the slippery condition of the rails, the plaintiff on cross-examination testified as follows:
“Q. Could you' not have pulled up to within thirty feet of the track where you could have had a view of the track and stopped? A. I could have. I could have eased up to six feet and stopped, but if the train had let me know they were coming I wouldn’t have come on.”
Plaintiff admits that he was looking in another direction; did not see or hear the train until his car was within 15 feet of the track. The approach of the train was observed by the sole passenger in the street car, who, after shouting a warning, jumped off. This passenger testified that the car never stopped at all when approaching the railroad crossing; that the conductor was on *572 the front platform with the motorman, and neither seemed to pay any attention to his warning. The conductor testified that he was standing in the aisle about the center of the car when the passenger cried out, and started towards the rear end of the car, but that the collision took place before he could get out. The conductor further testified that the car was about 10 feet from the railroad track when the passenger gave the warning. The city engineer testified that the motorman could have had an unobstructed view of the defendant’s track at a distance of 28 feet on a right line from its center, or a few feet further by the curve of the street railway track. This same witness further testified that it was easier to stop even on a greased curve than on a straight track, as a curve opposes a constant resistance to the movement of the trucks. This common-sense testimony disposes of plaintiff’s excuse for not stopping his car on the curve.
Plaintiff having failed to stop his car at the proper place for observing the railroad track must be held to have been guilty of contributory negligence. Snider v. R. R. Co., 48 La. Ann. 1, 18 South. 695; Elliott, §§ 1167, 1170.
On the evening in question, the defendant’s train stopped at a railroad crossing about 400 feet from the street railway crossing at which the collision occurred. The train was about 300 feet in length, and, according to the testimony of the engineer, its speed was about 5 or 6 miles an hour. The engineer was watching the rear end of the train foi signals, and saw the street car approaching the crossing, and on seeing in a second that the motorman did not intend to stop, sounded the whistle, and at the same time the conductor on the rear end of the train applied the air brakes, and the engineer completed the emergency application, and stopped the train.
The conductor and flagman on the rear of defendant’s train testified that • they were keeping a good lookout and sounding the air whistle all the way; that as soon as the street car came into view the whistle was sounded as a warning, and that as soon as it was discovered that the plaintiff intended to try to cross ahead of the train, the conductor shouted and applied the emergency brakes.
The trainmen had the right to presume-that the motorman would exercise his senses so -as to avoid an accident by stopping his car short of the crossing. Shulte v. Railroad Company, 44 La. Ann. 509, 10 South. 811.
There is the usual conflict of evidence as to the speed of the train and of the car, as to the signals given, as to distances, and other particulars, that may be expected in cases of this kind. But we find sufficient evidence in the record to support the finding that the servants of the defendant did all that could be reasonably expected of them to avoid the injury as soon as the danger of the situation became apparent to them. A perusal of the evidence creates the impression on our minds that the plaintiff on the occasion in question acted not only imprudently but recklessly; that the defendant’s trainmen had the right to believe that the plaintiff would stop his car before reaching the crossing; and that they, after the danger became apparent, used all available means to avoid the accident. If the defendant was negligent in the matter of the operation of its train, the negligence of both parties concurred to produce the accident, and therefore there can be no recovery. Bell Alliance Co. v. Texas & Pacific Ry. Co., 125 La. 777, 51 South. 846. In the same case the last clear chance doctrine is thus expressed:
“If, after the engineer has seen the danger of the person on or near the track, he can stop his engine and avert the accident, and fails to do so, the person injured can recover, in spite | of his own negligence.”
*574 If we qualify this enunciation by interpolating “should have seen,” the result in this ease would be the same, as the trainmen were keeping a vigilant lookout.
The violation of an ordinance by a railroad company does not necessarily carry with it the abrogation of the rules of contributory negligence. Lopes v. Sahuque, 114 La. 1004, 38 South. 810; May v. T. P. Ry. Co., 123 La. 647, 49 South. 272.
This is a typical jury case, and, on the record before us, we see no good reasons for disturbing the verdict.
Judgment affirmed.