(75 South. 676)

No. 20825.

LEMEE v. TEXAS & P. RY. CO.

(April 16, 1917.   Rehearing Denied June 11, 1917.)

*(Syllabus by the Court.)*

**1. MASTER AND SERVANT** ⬅111(1)—SAFETY APPLIANCE ACTS—HANDHOLDS.

The Safety Appliance Acts of Congress of March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1916, §§ 8605–8612), March 2, 1903, c. 976, 32 Stat. 943 (U. S. Comp. St. 1916, §§ 8613–8615), and April 14, 1910, c. 160, 36 Stat. 298 (U. S. Comp. St. 1916, §§ 8617–8623) absolutely require handholds above footboards, and railroads will not be permitted to substitute for them uncoupling or operative levers.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215, 255.]

**2. MASTER AND SERVANT** ⬅228(2)—SAFETY APPLIANCE ACTS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

A violation of the Safety Appliance Acts of Congress constitutes negligence per se, on the part of the railroad; and in such a case contributory negligence on the part of the injured employé is excluded from consideration.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 671.]

**3. MASTER AND SERVANT** ⬅285(7) — SAFETY APPLIANCE ACT — PROXIMATE CAUSE OF DEATH—QUESTION OF FACT.

Whether a violation of the Safety Appliance Acts of Congress in not furnishing handholds was the proximate cause of the death of a switchman, thrown from the running board at night, is a question of fact, to be determined from all the probabilities and circumstances of the case.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1016.]

**4. MASTER AND SERVANT** ⬅111(1) — SAFETY APPLIANCE ACT—EXTENT.

The Safety Appliance Acts of Congress embrace all locomotives, cars, and similar vehicles used on any railroad which is a highway of interstate commerce.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215, 255.]

*(Additional Syllabus by Editorial Staff.)*

**5. DEATH** ⬅99(4)—EXCESSIVE DAMAGES.

A verdict of $10,000 awarded the widow of a night switchman for his suffering and death when run over by locomotive was not excessive.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 125, 126, 129.]

141 LA.—25

Appeal from Thirteenth Judicial District Court, Parish of Rapides; W. F. Blackman, Judge.

Suit by Mrs. Emily Lemee, widow of Joseph G. Lemee, deceased, against the Texas & Pacific Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Howe, Fenner, Spencer & Cocke, of New Orleans, and Wm. H. Peterman, of Alexandria, for appellant. Robert P. & John R. Hunter, of Alexandria, C. H. McCain, of Colfax, and Robert A. Hunter, of Shreveport, for appellee.

LAND, J.   This is a suit by the widow of Joseph G. Lemee against the defendant company for damages for his suffering and death, caused by his being run over by a locomotive of the defendant in its railroad yards at Boyce, La.

Plaintiff alleged that her late husband was employed by the defendant as night switchman, and while engaged in the performance of his duties on the evening of April 5, 1913, was run over as above stated, and was fatally injured, living about one hour after the accident, and suffering great pain and anguish before his death.

Plaintiff further alleged that at the time of the accident the deceased was riding upon the footboard of an engine which was not properly equipped with safety appliances for the protection of the workman; that the engine was engaged in switching a "bad order" box car; that the yards at Boyce were not lighted; that the track was in bad condition; and that the proximate cause of the accident was due to the defective appliances on said engine and the darkness of the railroad yards.

The answer admitted the employment, accident, and death, but specially denied the alleged defective condition of the defendant's locomotive or cars, and that the railroad yards were not sufficiently lighted, and that the fatal injury to plaintiff's husband was

the result of negligence on the part of the defendant or any of its servants or employés, or resulted from the negligent management or operation of its locomotive or cars, or from the kind of equipment used at the time said injuries were sustained, but on the contrary averred that:

"Said injuries were either the result of the sole or contributory negligence of the plaintiff's husband, or were due to an unavoidable accident, the cause of which is not attributable to respondent, and for which it is not liable in law."

The cause was tried before the court, without a jury, and judgment was rendered in favor of the plaintiff for the sum of $10,000, with costs.

The defendant has appealed.

The evidence, consisting largely of expressions of opinion, is too voluminous for condensation within reasonable limits. We will, however, endeavor to briefly state the material facts, which seem to be established by the evidence.

Lemee, the deceased, was employed as a night switchman at Boyce, La., the division point on defendant's line of railroad between the city of New Orleans and Marshall, Tex.

A good deal of switching was required in the yards of the company at that point.

On the evening in question orders were given to the night switching crew to move a "bad order" car from one point to another in the yards. The engine assigned for that purpose was not a regular switch engine, but a road locomotive which had been altered to serve the purposes of a switch engine. Lemee and Carter, another switchman, were riding on the rear footboard between the box car and the engine.

After going a short distance, Wilson, the engineer, began to slow down, when looking back he saw Lemee, on the end of the footboard, with his lantern waving the go ahead signal, and then he saw the light go out.

At that very moment Lemee must have fallen from the footboard beneath the wheels of the car. Strange to relate, Carter who was standing on the other end of the footboard did not see Lemee fall. The engineer, hearing nothing further from Lemee, stopped the engine, and returned to find his mangled body near the track.

All switch engines are constructed with handholds above the footboards. The locomotive in question had no handhold over the footboard of the tender. Regular switch engines have sloping tanks and are equipped with headlights at both ends, the rear light being placed in the middle of the slope "so," as expressed by one of the witnesses, "the engineer can see the switchman, and the man can see the car they are going to, and so they can see everywhere."

The locomotive in question had no rear headlight, and its tank was so high that the engineer could not see the switchman and vice versa.

The locomotive in question had shortly before the accident been taken off the road and left at Boyce, to be forwarded to the shops at Marshall, Tex., for repairs. There being at that time no switch engine at that place, the defendant through its agents, with the view of using said locomotive for switching purposes, removed the pilot, and put a footboard, with the usual handhold, in the front end, and a footboard in the rear end of the tank.

As switch engines are always constructed with handholds above the footboards, it may be taken for granted that such handholds are considered as appliances necessary to the safety of switchmen, when working on regular switch engines.

Handholds are even more necessary safety appliances, when switchmen are working on road locomotives used for switching purposes, because they are compelled to stand on the end of the footboard and lean outward when signaling the engineer.

In the case at bar, the locomotive had no

rear headlight (as switch engines have), but a small lamp on the tank.

One of the witnesses, a practical switchman, testified, in part, as follows:

"At night you have to depend entirely on the lamp and on the engineer to catch the signals. * * * You can't see the steps and the handholds like you can in the daytime, and are more liable to miss your footing. You only have lamp to see by, and what headlight is on the switch engine."

The contention of the defendant that the operating lever on the rear of the locomotive served the purposes of a handhold or rail is not sustained by the evidence. The lever was not constructed for such purposes, but to couple and uncouple cars, and lay only two inches above the top of the sill, too close to be readily grasped by the fingers of the switchman.

Of course, as shown by the photographs, a man could stand on the footboard when the engine was still and grasp the lever. But this does not prove that the lever could be readily grasped by the switchman when performing his rough and dangerous work, especially in the darkness while the engine was in motion.

Thomas Neal, yardmaster at Boyce at the time of the accident, in answer to a question as to the height of the lever above the sill, replied:

"Just about room enough to put your fingers. Just room enough to catch hold lightly and stick the end of your fingers under. Could not get a good grasp."

[1] Neal and other witnesses testified that handholds were necessary safety appliances. The federal law makes them so. 27 Statutes at Large, 531; 32 Stat. 943; 36 Stat. 298.

A handhold or handrail and an operating or coupling lever are different appliances used for different purposes. To hold with the defendant that the use of the latter dispensed with the employment of the former would be to nullify an important provision of the federal statute.

In United States v. Baltimore & O. R. Co. (D. C.) 184 Fed. 94, it was held that handholds as required by the statute could not be dispensed with by the use of "an uncoupling lever bar which ran nearly across the entire back of the tender, and was so located or of such a character that it might serve as a handhold."

Among other things the learned United States Judge said:

"As I construe the statute, it indicates that Congress has itself passed judgment on the utility of handholds in the ends and sides of cars, and it must be read as an absolute requirement."

[2] In a recent case it was held that it is clearly the legislative intent to treat a violation of the Safety Appliance Act as negligence per se; and that in such case contributory negligence is excluded from consideration. See San Antonio Ry. v. Wagner, 241 U. S. 476, 36 Sup. Ct. 626, 60 L. Ed. 1110.

That this case falls within the Safety Appliance Acts of Congress appears from the opinion and decree in Southern Ry. Co. v. United States, 222 U. S. 20–27, 32 Sup. Ct. 2, 56 L. Ed. 72.

[3, 4] The gist of that decision is contained in the following extract from the opinion:

"For these reasons it must be held that the original act as enlarged by the amendatory one is intended to embrace all locomotives, cars and similar vehicles used on any railroad which is a highway of interstate commerce." 222 U. S. p. 26, 32 Sup. Ct. 4, 56 L. Ed. 72.

Lemee, the switchman, died at his post in the performance of his duties. He evidently fell when the engineer saw the light of his lantern go out.

In order to signal the engineer, Lemee had to stand on the end of the footboard and reach out with his right arm, holding the lantern until it cleared the side of the tank, at the same time preserving his balance by holding on with his left hand. His fall was probably caused by his inability to secure or

maintain a sufficient hold on some part of the tender.

Defendant furnished Lemee with an unsafe place to work in—one unprovided with the safety appliances required by the statute—and he was mortally injured while performing his work in that place.

No negligence is shown, and none can be presumed, on the part of Lemee, whose fall may be reasonably assigned to the absence of the safety appliances required by the federal law, as an additional security for railroad employés.

The question what was the proximate cause of Lemee's fall is one depending for its solution on an appreciation of conflicting evidence, and on the face of record we are not prepared to say that the judgment below is clearly wrong on this issue.

[5] We do not consider the award of damages to be excessive; and for the reasons assigned the judgment appealed from is affirmed.