No. 508

First Circuit

LIPSCOMB v. STANDARD HIGHWAY CO., INC.

(October 10, 1929. Opinion and Decree.)

Robt. M. McGehee, of Hammond, attorney for plaintiff, appellant.

Rownd & Warner, of Hammond, attorneys for defendant, appellee.

ELLIOTT, J. Frank Lipscomb, while driving an automobile west on East Thomas street in the city of Hammond, La., state highway No. 190, was badly injured in a collision with a log wagon, being drawn by four mules, belonging to Standard Highway Company, Inc., and driven by Jim Aikens, its employee. The collision occurred at about 8 o'clock p. m. on July 18, 1928.

The plaintiff alleges: That he approached the rear of an automobile, going west, the direction in which he was going. That he signaled with his horn to pass, and, as he turned to the left to do so, there approached a double mule team hitched to a large heavy wagon driven in an eastern direction. That, while he was in the act of going around the car traveling in the same direction as himself, the wagon hit the front end of his car, driving the wagon tongue through the radiator, engine, and about 6 inches inside through the floor boards, demolishing his car, striking and rendering him unconscious, etc.

That the place was dark where the accident happened, being surrounded on one side by a pine thicket and by a large oak and pecan tree on the other. That had it not been for the dark place and the fact that he was engaged in making a curve around the car he was passing, the approaching vehicle would have been shown to him by the lights on his own car.

That the laws of the state and the city ordinance of Hammond require that all animal drawn vehicles using the streets and highway must be equipped with lights on the left-hand side of the vehicle, of such visibility as to be seen at least 300 feet either in front or behind.

That defendant was operating its said vehicle on said street and highway without a light, and in so doing was negligently violating said ordinance of the city and law of the state. That his injuries and damages were caused solely and entirely by the negligence, carelessness, and want of precaution on the part of the defendant. That he did not in any way contribute thereto.

He claims of the defendant $10,214 in damages on said account, of which amount $450, is for the loss of his automobile.

Defendant denies the negligence and carelessness alleged against it. Denies that it was the cause of plaintiff's injuries, denies responsibility therefor, and alleges that the accident was caused solely by the gross fault, carelessness, and recklessness of the plaintiff.

It further avers that its wagon did not run into plaintiff's car; that plaintiff's car ran into its wagon; that one of its mules was killed in the collision; and that it suffered a loss of $265 on account of same.

It prayed for the rejection of plaintiff's demand and for judgment against the plaintiff in reconvention for $265.

The lower court for written reasons held that defendant was negligent, but that the accident was caused by the contributory negligence of the defendant, and rendered judgment rejecting the demand of both parties.

The plaintiff appealed.

Plaintiff's brief in support of his demand cites many authorities, and contains a diagram which purports to show the course of plaintiff's car, and that of defendant's wagon, just previous to the accident, and their positions in the street at the moment of the impact.

No brief has been filed by defendant.

The evidence shows that defendant's wagon and mule team was being driven on the public street and highway mentioned without a light. If there is an ordinance of the city of Hammond on the subject, it was not offered in evidence. The state law, Act No. 232 of 1926, sec. 5, provides:

"All animal drawn vehicles, using the highways of this state, shall display a white light on the left hand side of the vehicle, so as to be plainly visible a distance of 300 feet from the front and rear of such vehicle."

Defendant was therefore committing a negligent violation of this law.

The question in the case is whether the plaintiff was at fault, negligent and reckless, as alleged by defendant, and whether his fault, negligence and reckless act contributed to bring about the collision and his own injury.

The defendant does not allege contributory negligence on the part of the plaintiff in express terms, but does charge explicitly that the plaintiff's fault, negligence, and recklessness was the sole cause of the accident, and prays that his suit against it be dismissed. This, in our opinion, includes the question of contributory fault, negligence, and recklessness on the part of the plaintiff.

The plaintiff's version of the occurrence is as follows:

"I was going in on East Thomas street in a westerly direction and fell in behind a car right ahead of me, and in so doing I turned to my left and blew my horn. As I did, I saw this object ahead of me, a wagon with a team. I applied the brakes and that is all I can remember."

That he was traveling between 12 and 15 miles an hour at the time.

Speaking of the occurrence later, he says:

"When I fell in behind the car and blew my horn to give the signal that I wanted to pass, I didn't see the object until then, then I saw this object right ahead of me and I applied the brakes as quick as possible, but it was too late, I was just right on him."

Cross-examined:

"Q. Did you pass that car?
"A. No, I never did pass it.
"Q. You testified a few minutes ago that you passed it?
"A. I went to pass it, I blew to pass.
"Q. You blew to pass it?
"A. But I never did pass it.
"Q. How fast were you going?
"A. Well, 12 or between 12 and 15 miles an hour."

He further testifies that he was not more than 15 or 20 feet from the mules when he first saw them; that the wagon ran into him; that the Day car at which he had blown to pass was about 15 or 20 feet ahead of him at the time of the collision, on his right; that the headlights on his own car were burning bright; that he could see about 35 feet ahead under the headlights of his own car.

"Q. Why didn't you see the mule team before you got within 15 feet of them?
"A. I was behind this car and the lights didn't go that way. I couldn't see them for this car.
"Q. But didn't you pull over to the left?
"A. When I went to pass.
"Q. He was only 10 or 15 feet in front of you before you pulled over to the left?
"A. Yes, sir.
"Q. Is that correct?
"A. Yes, sir.
"Q. And as soon as you pulled over to the left you hit the wagon?
"A. Yes, sir.
"Q. And you were only going 12 miles an hour?
"A. 12 miles. Between 12 and 15 miles an hour."

The wagon was an 8-wheeled log wagon, being pulled by four mules working in pairs, two in the lead and two under the tongue. The driver, Jim Aikens, was riding the tongue mule on the right-hand side. The car at which plaintiff had blown was being driven by Collins Day, accompanied by his wife.

Mr. Day, witness for plaintiff, testifies that Mr. Lipscomb blew his horn, and that he pulled over to the right-hand side of the road to let him pass; that he (Day) had already passed the mules at the time, and just as Lipscomb turned to the left the collision occurred. He estimated that he had gone about 25 or 30 feet when he heard the crash.

On cross-examination:

He repeated that Lipscomb did not pass him at all; that about 20 feet was the nearest that Lipscomb got to him.

"Q. You state that you pulled over to the right-hand side. At the time you pulled over did you see the mules?
"A. I had already passed them when I pulled over.
"Q. Did you have any trouble seeing the mules?
"A. No, sir, not at all. You could have heard them clear down the street, the mules with the wagon like that, four mules on the pavement, that way or on the ground either, you could have heard them."

Asked if there was room between his car and the wagon for another car, and he replied in the affirmative.

Asked how far Mr. Lipscomb's car was behind him when the impact occurred, and he said he did not know exactly; that he heard the horn and pulled over, and then, just a second after, he heard the crash; that he had gone 25 or 30 feet after hearing plaintiff's horn and passing the team, before the sound of the hitting.

Asked again, when meeting the wagon, if he had any trouble in seeing it with his light, and he answered that he did not have any trouble seeing them; that you could hear them a good while before you saw them. You could hear them for a block; that the mules were walking at the time.

Mrs. Day, witness for plaintiff, was in the car with her husband. She testifies that, when Mr. Lipscomb blew, they thought he was blowing for them. Asked to tell what happened, and she said that they heard the horn and drew to the side of the road for the car to pass; that they had passed the wagon, and just about that time they heard them crash together.

"Q. Did you pull over from the sound of the horn before you passed the wagon or after?
"A. It was a little after we passed the wagon."

Cross-examined:

"Q. You noticed the wagon when you passed?
"A. Yes, sir."

Jim Aikens, the negro driver of defendant's wagon, testifies that he met and passed the Day car; that, after passing it a distance of about the width of the street, he was run into by the plaintiff; that he first noticed the lights of plaintiff's car about 100 feet ahead of him coming forward in a zig-zag course.

The plaintiff speaks of the place where the collision occurred as having been dark, but he is not corroborated in that respect by Mr. Day.

The evidence shows that the collision took place on the right-hand side of the road, in the direction the wagon was going, which was the right side for the wagon and the wrong side for the plaintiff, except for the purpose of going around another car traveling in the same direction as himself. He was not making a curve at the time around the Day car, as he alleges. The Day car and defendant's wagon had at the time passed each other. Plaintiff never got up to the Day car; he was behind it, a distance estimated by Mr. Day at 50 feet, at the time he blew, and the collision between him and defendant's team occurred almost immediately thereafter.

The Day car was not concealing defendant's team from plaintiff's view, as plaintiff testified, at the time he turned to the left, because it was ahead of him on the same side of the road on which he was himself; while defendant's team was advancing east toward plaintiff, not behind the Day car, but on the opposite side of the road, and was nearer to the plaintiff at the time than was the Day car. But, when plaintiff turned to the left, it was for the purpose of going around the Day car, and the collision occurred almost immediately after he had turned; but not before plaintiff had had opportunity to get on the left-hand side of the road, because his car hit the lead mules, broke the leg of one, and threw the other up on top of the hood against his windshield, and hit straight forward against the end of the wagon tongue.

At the time plaintiff blew and turned he must have been within 15 or 20 feet of defendant's team. Two pair of mules walking one behind the other, the driver riding one of the tongue mules, the 8-wheeled wagon following, was a conspicuous object, so close to him that he could not help seeing it under the headlights of his own car if he had been looking or exercising any care in the direction he

had turned. At such a close distance he could not have helped seeing it in the dark without lights, unless the place was exceptionally dark.

Plaintiff was asked:

"Q. Are you·in position to state to the court that, if this object had had a light on it, this accident would have been avoided?

"A. It would."

This opinion is negatived by the showing that he could and would have seen it under his own lights if he had been looking. Without lights, he could not have helped seeing it if he had been looking, unless the place was exceptionally dark.

Under the law the plaintiff is charged with seeing what he must necessarily have seen, if he had been looking in the direction he had turned. Kelly vs. Schmidt & Zeigler, 142 La. 91, 76 So. 250; Gibbens vs. N. O. Terminal Co., 159 La. 347, 105 So. 367.

Negligence is a failure to observe or do something one ought to have seen or done, and would have noticed or done with ordinary vigilance. It is the failure to be prepared for something visible or at least of probable occurrence, or that might be reasonably expected to happen. Hearn vs. St. Charles St. R. Co., 34 La. Ann. 160, p. 163; Gallaher vs. Crescent City R. Co., 37 La. Ann. 288, p. 291; Hanson vs. Mansfield R. & T. Co., 38 La. Ann. 111, p. 117, 58 Am. Rep. 162; Barnes vs. Shreveport City R. Co., 47 La. Ann. 1218, p. 1224, 17 So. 782, 49 Am. St. Rep. 400; New Orleans & N. E. R. Co. vs. McEwen & Murray, 49 La. Ann. 1184, p. 1196, 22 So. 675, 38 L. R. A. 134; Clerc vs. Morgan's Louisiana & T. R. & S. S. Co., 107 La. 370, p. 380, 31 So. 886, 90 Am. St. Rep. 319; Northern Pac. R. Co. vs. Adams, 192 U. S. 440, p. 450, 24 S. Ct. 408, 48 L. Ed. 513.

Plaintiff should not have turned to the left side of the road without first seeing if it was clear and open for him to do so. He did turn and drive right into· defendant's team, which he could not help but see. Such disregard for what must be taken to have been an obvious, apparent encounter was more than mere carelessness; it was recklessness.

Contributory negligence is where plaintiff and defendant have each done or omitted to do some act, through negligence, which it was their duty to do, and their combined negligence has produced the injury of which one or both of them complain. Bomar vs. Louisiana N. & S. R. Co., 42 La. Ann. 983, 8 So. 478; Cline vs. Crescent City R. Co., 43 La. Ann. 327, p. 333, 9 So. 122, 26 Am. St. Rep. 187; Paland vs. Chicago, St. L. & N. O. R. Co., 44 La. Ann. 1003, 11 So. 707; Ferris vs. Hernsheim, 51 La. Ann. 178, p. 180, 24 So. 771.

The plaintiff contends that defendant's failure to have a light on its wagon was a violation of a law intended for the safety of all concerned, and that contributory negligence cannot avail as a defense against an act of that kind.

The burden of proof is upon the defendant to show that the fault and negligence of the plaintiff produced or contributed to bring about his own hurt as a result of the same.

That burden has been discharged; the fact appears, and it is sufficient if it is available.

It is well established that the violation of a city ordinance does not necessarily carry with it the abrogation of the application of the rules of contributory negligence or other questions affecting defensive liability of the defendants for damages

in particular cases. Lopes vs. Sahuque, 114 La. 1004, 38 So. 810; May vs. T. & P. Railroad Co., 123 La. 647, 49 So. 272; Adams vs. Arkansas, L. & G. Railroad Co., 127 La. 567, 53 So. 865; Gibbens vs. N. O. Terminal Co., 159 La. 347, 105 So. 367.

In regard to the laws of the state, the same rule has been applied. Thus in Hailey vs. R. R. Co., 113 La. 533, 37 So. 131, 133, the court considered the neglect of a railroad company to comply with the provisions of Act No. 39 of 1882, the requiring language of which is about the same as that of Act No. 232 of 1926, sec. 5.

The court said:

"It is true that the failure to erect the tell-tale or 'whipropes' will not excuse negligence on the part of the employee in attempting to cross without stooping, if he is well aware that he should stoop; but if it does not appear that he was aware of the necessity of timely stooping about two feet to be safe, knowledge will not be imputed in the absence of testimony fixing it upon him."

In Dalberni vs. N. O. Can Co., 139 La. 49, 71 So. 214, the court acted on the same question under Act No. 34 of 1906 and Act No. 301 of 1908, concerning the employment of children, and in so doing said:

"The only conclusion from the testimony is that the daughter of plaintiffs negligenly permitted her foot to rest on the treadle, and that the die descended on her thumb and injured it. In so doing, she contributed towards the damage, and plaintiffs cannot recover."

The same defense based on the same acts was urged in Darsam vs. Kohlmann, 123 La. 164, 48 So. 781, 20 L. R. A. (N. S.) 881. The syllabus reads in part:

"Whilst the violation by the master of the provisions of a statute regulating the employment of his servants is negligence per se, and actionable, if injuries are sus-tained by the servants in consequence thereof, such provisions are not to be so construed as to abrogate the ordinary rules relating to contributory negligence, which is available as a defense, notwithstanding the statute, unless the latter is so worded as to leave no doubt that such defense is to be excluded."

The question was re-examined in Alexander vs. Standard Oil Co. of Louisiana, 140 La. 54, 72 So. 806, and the ruling in Darsam vs. Kohlmann was approved.

In Flores vs. Steeg Printing & Publishing Co., 142 La. 1068, 1069, 78 So. 119, the syllabus reads in part:

"In a suit for damages resulting to a child over 14 and under 16 in the course of his employment, contributory negligence may be pleaded and proved by the defendant."

In Tatum vs. R. R. Co., 124 La. 921, 50 So. 796, 798, the Supreme Court approvingly quoted from Thompson on Negligence:

"Where the case of the traveller's contributory negligence in this situation is clear as a matter of law, the railroad company may urge this as a defense although itself violating a statutory regulation at the time of the accident."

In Carlisle vs. La. Oil Refining Corporation, 3 La. App. 671, the syllabus reads in part:

"To recover damages caused to an automobile by its running into a truck operated without lights at night it is necessary for the plaintiff, owner of the damaged automobile, to prove that the accident was caused by the negligence of the operator of the truck, and that he, plaintiff, was not guilty of any negligence which created or aided in the accident."

In Lemee vs. T. & P. Railroad Co., 141 La. 769, 75 So. 676, the court considered and applied the Safety Appliance Act of

Congress. In that case it was held that the violation of the Safety Appliance Act of Congress constituted negligence per se on the part of the railroad company, and that contributory negligence on the part of the injured employee was excluded from consideration; that such was the evident intention of the Act of Congress, citing Southern Ry. Co. vs. U. S., 222 U. S. 20, 32 S. Ct. 2, 56 L. Ed. 72, and San Antonio & Aransas Pass R. Co. vs. Wagner, 241 U. S. 476, 36 S. Ct. 626, 60 L. Ed. 1110.

In the Lemee case the court held that it had not been shown that Lemee was at fault. The case was therefore no departure from the previous decisions based upon the statutes of this state.

The Steeg case, subsequently decided, adheres to the rule stated in Darsam vs, Kohlman, 123 La. 164, 48 So. 781, 20 L. R. A. (N. S.) 881.

We therefore hold that Lipscomb, having turned to his left and driven straight, ahead right into defendant's team, in the obvious occupation of the side of the road on which it belonged to be, in the direction it was going, and having received his personal injuries and property loss, because of his disregard of the same, that such conduct bars recovery notwithstanding the fact that defendant was at the time violating the law by failing to have lights on his wagon.

The finding of the lower court, in our opinion, was correct.

Judgment affirmed; plaintiff and appellant to pay the cost in both courts.

MOUTON, J., not participating.