PONDER, Justice.
 

 The plaintiff, Mrs. Mary Hays Tolle, individually and as natural tutrix of her minor daughter, Mary Ann Tolle, brought suit against the defendants, the Higgins Industries, Inc., Higgins Plastics, Inc., and the Maryland Casualty Company, insurer, seeking to recover damages in the amount of $45,000 for herself and the amount of $15,000 for the use and benefit of her minor daughter. The suit is based on the ground that the death of Albert Elmer Tolle, the’ plaintiff’s husband, was occasioned by the negligent operation of the defendant’s tug or towboat, “Oxduzer,” which was pushing a barge of logs in such a manner as to cause dangerous swells that capsized the skiff or rowboat in which Tolle and his. companion Roy Ridnour, were returning: from a fishing trip, resulting in the death of Tolle by drowning. The defendant de
 
 *90
 
 nied that there was any negligence in the operation of the towboat and in the alternative interposed a plea of contributory negligence on the part of the deceased.
 

 Upon trial, the lower court gave judgment awarding the plaintiff $17,500 for the damages suffered by her and $9,000 for the damage occasioned her minor daughter. On appeal, the First Circuit Court of Appeal reversed the judgment of the lower court and dismissed the plaintiff’s suit. One of the members of that court'"vigorously dissented to the holding. The plaintiff applied for and obtained a review. The matter has been submitted for our determination.
 

 It appears that the judgment of the Court of Appeal is based on the ground that the plaintiff failed to carry the burden of proof resting on her to show that the death of Tolle was caused through any negligence or fault on the part of the operators of the towboat and barge. The Court of Appeal were of the further opinion that if there was any negligence on the part of the operators of the towboat or barge that the contributory negligence of Tolle barred recovery.
 

 On August 30, 1944, Roy Ridnour and the deceased engaged a skiff or rowboat at the Rome’s Ferry Bridge on Tickfaw River in Livingston Parish to go fishing. They attached a 4% horse power outboard motor to the skiff to propel it. The skiff was equipped with the usual safety appliances, including life preservers. It was painted orange in color and was 14 feet long by 3 or 3% feet wide, with a well in the center. After they obtained the skiff, they proceeded down Tickfaw River fishing to a point about
 
 2Y2
 
 or 3 miles below the bridge. Sometime around 3:30 in the afternoon, they decided to return to the bridge because it had started raining. When they had reached a point about 2% miles below the bridge, they attempted to pass the “Oxduzer,” a towboat that was coming down the river, pushing a barge 28 feet wide by 100 feet long, loaded with some 300 logs. The logs were stacked so high on the barge that it was impossible for the operator of the towboat to see ahead of him or the course he was pursuing. Ridnour and the deceased attempted to pass the towboat on its west side approximately 150 feet from the barge and were capsized by the swells or displacement of water caused by the barge or the propellor of the towboat. Ridnour swam safely to the bank. Tolle, who was dazed because of an injury received to his head by the capsizing of the boat, drowned.
 

 Ridnour was the only eyewitness who testified in the case. The operator of the towboat and the deckhand, who was supposed to be on top of the logs as a lookout, did not see the skiff capsize or the drowning of
 
 Tolle.
 
 Their testimony is negative in character. The defendants produced witnesses who testified to experiments performed in the Industrial Canal, which it claims produces a stronger wash
 
 *91
 
 on account of the canal being narrower than the Tickfaw River.
 

 We can not agree with the Court of Appeal in not giving full credence to Ridnour’s testimony. He was the only eyewitness and a man highly respected in the community in which he lived. He held the position of manager of the Southeast Division of the Louisiana Power and Light Company. The fact that he was a friend of the deceased does not, in our opinion, weaken his testimony. There was undoubtedly gross negligence on the part of the operator of the towboat and the deckhand. While the operator of the towboat and the deckhand both testified that the deckhand was on top of the load of logs as a lookout, yet it is seemingly strange that they did not see the skiff capsize or Tolle drown.
 

 The evidence shows that Tolle was drowned. His body was recovered near the point that Ridnour testified that he was drowned. There is nothing in the evidence whatsoever to show that Tolle was drowned in any other way than that testified by Ridnour. The defendants’ deckhand admitted that when they arrived at Manshac, some 3% hours later, that he was informed of the drowning of Tolle. This, in our opinion, shows that the news of Tolle’s drowning had travelled some distance and the only reasonable conclusion is that Ridnour, as soon as he reached the bridge, reported the manner of the drowning. This, in our opinion, strongly corroborates the testimony given by Ridnour on the trial and refutes any idea of Tolle having been drowned in any other manner.
 

 As we appreciate Ridnour’s testimony: He saw the barge and towboat in ample time to reach safety, if he had been aware of the dangerous swells, but he did not see the dangerous swells until they were in such close proximity that it wás impossible for them to reach safety; the deceased turned the skiff to meet the waves, which is the proper way to meet a wave wash. If the deceased had attempted to turn the skiff towards the bank, the waves would have struck it on the side and have more easily capsized it. If the deckhand had been acting as a lookout on this heavily loaded barge, it is seemingly strange that he did not see this orange-colored skiff coming up the stream on the starboard side of the barge. He should have seen the skiff coming upstream and the waves thrown out by the barge. As a matter of fact, he did not see what he should have seen. Ridnour testified that as soon as he saw the danger of the waves, he waved at the barge and screamed a warning. The operator of the barge and the deckhand were extremely negligent in not observing the signal or hearing the warning. The operator of towboat, according to his own testimony, had travelled many times up that river and undoubtedly knew that many people fish there in skiffs. He also undoubtedly knew that very few vessels, larger than fishing craft, traversed this river.
 

 
 *92
 
 We find no fault in the law stated by the Court of Appeal to the effect that a duty rests upon vessels not to travel on navigable waters in such a manner as to produce displacement waves that will cause injury to other properly handled craft or that it is the duty of operators to take precaution to curtail the force and effect of such waves. We find no fault in the rule of law requiring lookouts on vessels navigating the thoroughfares of commerce. For purpose of a decision in this case, we may concede that it was the duty of the operator of "the skiff, on account of its mobility, to avoid the danger if it had been discovered in time, but the evidence in this case, which •consists of the only eyewitness’s testimony, shows that when the danger was apprehended, it was too late to avoid it and the operator of the skiff did the most practical thing by heading into the waves. If the operator of the skiff had turned it broadside to the waves, the danger would have been more imminent. We are convinced that the operator of the towboat and the deckhand were extremely negligent in not observing the skiff and the drowning of Tolle. If they had observed the catastrophe, it would have been possible to render some assistance to the drowning man. It would appear to us that the operator of the towboat and the deckhand did not use any reasonable care or prudence by their failure to see the approaching skiff or the catastrophe. The noise of the engines undoubtedly prevented them from hearing Ridnour’s cry of warning.
 

 The positive testimony of Ridnour cannot be overcome by the negative testimony of these witnesses or the theoretical possibility demonstrated by a private experiment, made under different conditions and outside the presence of plaintiff or her counsel. Theoretical possibilities cannot outweigh direct testimony because of their uncertainty. Ridnour is the only one who testified as to how the deceased met his death and no other reasonable explanation has been advanced. Under such circumstances, we must arrive at the conclusion that the deceased’s death resulted from the negligence of the operator of the towboat and the deckhand and not from any negligence on the part of the deceased.
 

 In the case of Salmen Brick & Lumber Co., Ltd,, v. Southern Pacific Co., 132 La. 356, 61 So. 401, the following propositions of law are laid down: The operator of a vessel creating dangerous swells must at least use ordinary care so as not to injure other vessels with equal navigation rights. Even where one of the boats is stationary, the moving boat cannot be exonerated from liability, unless it shows it was not in its power to prevent injury by adopting any practical method of compulsion and she is bound to know and guard against the effect of swells and suction caused by her movement. Extraordinary swells, even though arising in the usual manner, are responsible for their effects upon an innocent vessel. Damage to weaker vessel, but careful craft, by vessels
 
 *93
 
 causing swells by their displacement effect gives rise to a cause of action. It is further stated therein that exoneration is only possible where a vessel proves herself blameless by showing the injury was not avoidable.
 

 There is no question but what the operator of a towboat could have slackened speed and avoided upsetting the skiff, if the operator of the towboat and deckhand had performed their duty and used reasonable care. Counsel has cited many cases from other States involving circumstances different from those involved herein. Most of these cases involve damages caused to small craft navigating in streams which are traversed by many large craft. We have no such situation here. Tickfaw River is known as a famous fishing stream and many small craft operate therein. It is only occasionally that larger vessels navigate this stream.
 

 The judgment of the lower court awarding the widow $17,500 and the minor heir $9,000 is excessive according to the jurisprudence of this State.
 

 In the case of Dobyns v. Yazoo & M. V. R. Co. 119 La. 72, 43 So. 934, a freight conductor, 32 years old, earning $1,200 a year, was killed. His widow was awarded $10,000 damages. A like amount was allowed the widow of a night watchman killed by a locomotive in the case of Lemee v. Texas & P. R. Co., 141 La. 769, 75 So. 676. In the case of Feely v. National Packing Co., Ltd., 141 La. 903, 75 So. 837, the widow and child of a 54 year old man, drawing a salary of $150 per month, were awarded $15,000 for his death. The widow of a 67 year old man, earning $30 per week, was awarded $10,000 for damages in the case of Rose v. L’Engle, 148 La. 310, 86 So. 822. $15,000 was awarded to a widow and two minor children for the death of a 23 year old husband, earning $2.50 per day, in the case of Dotson v. Louisiana Central Lumber Co., 144 La. 78, 80 So. 205.
 

 Tolle was 60 years old at the time he was drowned. He had a life expectancy of 14 years. His daughter was 16 years of age. It appears from the evidence that Tolle was an efficient contractor and erected many public and private buildings prior to the last World War. He worked during the war for the government at a salary of $5,000 per year. At the time of his death, he was working for Frank Cucchiara, owner of Frank’s Lumber Yard in Hammond, Louisiana, engaged in retail lumber business and the construction of buildings. Tolle had control of the contracting department and, on account of the restrictions in obtaining building materials, was working for $50 per week and part of the profits derived from the buildings he constructed. The owner of the company testified that under ordinary conditions Tolle would earn from $10,000 to $15,000 a year, but at that time, on account of restrictions, he was not earning much more than the salary paid him.
 

 
 *94
 
 In arriving at the amount of damages, our courts take into consideration the earning capacity of the man, his age, his life expectancy and other surrounding circumstances. In view of the fact that some of the decisions have allowed widows whose husbands’ earning capacity ranged from $30 per week to $150 per month an amount of $10,000, it would seem that under the circumstances in this case the widow should be awarded $12,000.
 

 Children of a deceased father of a less earning capacity than Tolle’s have been awarded $5,000. Under the circumstances in this case, we think that $7,000 would be the proper amount to award for his minor daughter.
 

 For the reasons assigned, the judgment of the Court of Appeal is reversed and set aside. The judgment of the district court is amended so as to award the plaintiff $12,000, individually, and $7,000 for the benefit of the minor, Mary Ann Tolle; with legal interest from judicial demand until paid. As thus amended, the judgment of the lower court is reinstated and made the judgment of this Court. All costs to be paid by the defendants.